**Susan L. Aranoff v. Hon. Alden T. Bryan, et al.**

[569 A.2d 466]

No. 89-295

Present: Allen, C.J., Peck, Gibson and Dooley, JJ.[1]

Opinion Filed November 3, 1989

---

[1] Justice Dooley sat for argument but did not participate in the decision.

*Gensburg, Axelrod & Adler*, St. Johnsbury, for Petitioner.

*Jeffrey L. Amestoy*, Attorney General, and *Marilyn R. Skoglund*, Assistant Attorney General, Montpelier, for Respondents.

**Allen, C.J.** Petitioner, a judicial law clerk for the district and superior courts of Caledonia, Essex and Orleans Counties, seeks injunctive and declaratory relief enjoining all current Vermont district and superior judges from disciplining her for alleged violations of Canon 6 of the Law Clerk Code of Conduct, and declaring that Canon 6 is unconstitutional. We dismiss the petition.

The complaint states that petitioner's supervisor, who is not a named defendant, has attempted to restrain her expression of personal and political beliefs under the authority of Canon 6.[2]

---

[2] Canon 6 of the Code provides:

A law clerk should refrain from *inappropriate* political activity. (Emphasis supplied.)

    1. A law clerk should not:

      a) Act as a leader or hold any office in a political organization.

      b) Make speeches for a political organization or candidate or publicly endorse a candidate for public office.

      c) Solicit funds for or pay an assessment or make a contribution to a political organization or candidate, attend political gatherings, or purchase tickets for political party dinners, or other functions.

    2. A law clerk should resign from a [sic] office when he or she be-

Petitioner complains specifically that she "has been told," inter alia, that she may not write articles for a monthly newspaper serving Vermont's lesbian and gay population; that she may not remain a secretary of the Vermont Coalition of Lesbians and Gay Men, allegedly because it is a political organization; that she may not serve such organization in a ministerial capacity; that she may not actively disseminate information for the organization; that she may not wear buttons or affix bumper stickers to her car tending to indicate sexual orientation; and that she may not use her residence as a "safe home" for lesbians or gay men needing shelter. She further alleges that on November 8, 1988, she was reprimanded for her activities and told that one more violation would result in immediate dismissal from employment. Petitioner also asserts that she was told to limit her activities at a public march on the abortion issue by not indicating which side of the debate she might be on. She allegedly was told that she could neither disseminate information about, nor testify at a hearing of the Vermont House of Representatives concerning discrimination on the basis of sexual orientation. Petitioner asks for a declaration that Canon 6 is "unconstitutional because it is overbroad, vague, and invades the privacy and association rights of law clerks."

The Vermont attorney general has moved to dismiss the complaint, and we grant the motion on three fundamental grounds: first, because the complaint fails to state a claim against the named defendants; second, because the matter should have been brought as a grievance under procedures designed to serve state employees in petitioner's position; and third, because the constitutional claim is premature.

---

comes a candidate either in a party primary or in a general election for a nonjudicial office, except that he or she may continue to hold office while being a candidate for election to or serving as a delegate in a state constitutional convention, if he or she is otherwise permitted by law to do so.

3. A law clerk should not engage in any other political activity except on behalf of measures to improve the law, the legal system, or the administration of justice.

Judges and candidates for judicial office are barred from the same activities by Canon 7 of the Code of Judicial Conduct.

## I.

■■   We first observe that this Court is not an appropriate forum for a personnel grievance.[3] The Vermont Supreme Court's jurisdiction is principally appellate. Vermont Constitution, Ch. II, § 30. We understand that petitioner may have brought this action in the Supreme Court because of her view that inclusion of every superior and district judge and persons assigned the duties of superior or district judge as named defendants may have disqualified the entire trial bench, as well as any person serving on the bench by designation. Nevertheless, disqualification questions are to be resolved by the courts, not by the parties, and the choice of forum does not depend on whether a plaintiff names sitting judges as defendants. Assuming that petitioner has a justiciable claim, the action should have been commenced in the superior court. However, it will not serve either the courts or petitioner, who has left her position as law clerk since the institution of this suit, to delay consideration of this matter, and in the interest of judicial economy we will consider the merits. See *Pfeil v. Rutland District Court*, 147 Vt. 305, 308, 515 A.2d 1052, 1055 (1986).

## II.

■   For purposes of a motion to dismiss, we assume that all of the factual allegations in petitioner's complaint are true. *Haystack Property Owners, Inc. v. Sprague*, 145 Vt. 443, 444, 494 A.2d 122, 123 (1985). Nonetheless, the statement in the petition that "[t]he named defendants are the current District and Superior Court judges, all of whom have the authority to discipline and or terminate the employment of Petitioner" is not entirely a statement of fact. Unquestionably, the named defendants are all members of the Vermont trial court bench. However, the assertion that any of them has the authority to discipline or terminate petitioner's employment is a description of the legal power of the several named defendants and hence is

---

[3] Even an action for extraordinary relief under V.R.A.P. 21(b) must set forth concisely why there is no remedy in superior court. See *Pfeil v. Rutland District Court*, 147 Vt. 305, 308, 515 A.2d 1052, 1055 (1986).

a question of law, not fact. Petitioner did not offer support in law for her contention that any of the named defendants had the authority to discipline her or terminate her employment. The petition itself places the responsibility for enforcement of the law clerk code of conduct on the chief law clerk:

> 8. . . . Petitioner has been told that the chief law clerk determines on her own what is permissible conduct and what is not and that those lines are not subject to negotiation.

Except for the conclusory statement that trial court judges "have the authority to discipline and or terminate the employment of Petitioner," petitioner does not explain why all the sitting judges have been named as defendants.

The attorney general amplifies petitioner's statement that the chief trial court law clerk has supervisory authority over trial court law clerks. See Appendix C of the Personnel Policy of the Vermont Judicial Branch ("Personnel Policy"). The supervisor has the initial authority to discipline trial court law clerks, Personnel Policy, Part II(A)(3)(d), and to recommend suspension or dismissal, Personnel Policy, Part VII(B)(2)(c). Ultimate approval of discipline or suspension decisions lies with the Office of the Court Administrator, not with the individual trial court judges. Personnel Policy, Part II(A)(2)(g).[4] Both petitioner and the attorney general agree that trial court judges have supervisory responsibilities over law clerks while they are performing tasks assigned by the judge. Clerks aid judges in the performance of their duties, over which the chief trial court clerk necessarily has little day-to-day involvement. But it is equally clear that it is the chief clerk, not a judge, who administers an oral or Step I warning under Personnel Policy Part VII(B)(2)(c) as well as a Step II or written warning, and that the ultimate responsibility for approval or disapproval resides

---

[4] We stated earlier that for purposes of a motion to dismiss we must assume that all of the factual allegations of petitioner's complaint are true. We nevertheless may cite and rely on the Personnel Policy of the State of Vermont, both because it has the same force of law as any state regulation and is not includible among the "facts" that are binding on this Court, and because we may in any event take notice of our own rules and policies.

with the Court Administrator. The disciplinary path from the chief trial court clerk to the Court Administrator is clear, with petitioner disputing only the precise nature of the latter's power of "approval."

Petitioner presents no basis for her assertion that the trial court judges are involved in the disciplinary process at any stage. Nor does she allege that any judge, either one whom she was actually serving or any that she might serve, participated in any way in the statements, threats, or actions that have given rise to the present complaint.

■ Petitioner has stated no claim in law against any named defendant. Therefore, the action should be dismissed as to each and every named defendant.

### III.

Since the present petition has been brought in the wrong forum and does not name defendants who might be liable for the harm alleged, we have ample grounds to dismiss the action without pursuing other issues. A decision limited to those grounds might imply that a superior court action would lie on the facts presently alleged, but this is not the case. Petitioner concedes that trial law clerks are state employees who are statutorily exempt from the classified service under 3 V.S.A. § 311(a)(5), and are subject to the Personnel Policy of the judicial branch.[5] Her complaint in the first instance states a grievance, as defined in Part VIII(A)(2)(b) of the Personnel Policy, which states:

> "Grievance" means a complaint . . . by an employee concerning the interpretation or application of any rule or regulation governing personnel practices or working conditions of the Judicial Branch which is contained in any formal personnel policy, manual, administrative directive, or nonwritten practice.

The Personnel Policy contains a grievance procedure designed to address disputes exactly like this one. Part VIII of the Per-

---

[5] See, generally, 3 V.S.A. ch. 27, and in particular 3 V.S.A. § 926.

sonnel Policy also provides an appeal procedure for disciplinary actions concerning work rule violations.

Petitioner concedes the existence of a formal grievance procedure, but argues that it need not have been pursued, since the grievance process only applies where discipline has been administered, and in the absence of formal discipline, her complaint was not yet "a justiciable grievance." The simple answer is that petitioner's dilemma is self-inflicted. She fears disciplinary action or dismissal, but skirts the process designed to protect employees from unfair treatment on grounds that the threatened actions have not yet occurred. The identical reasoning would open the doors of the courts to any state employee in conflict with her supervisor so long as the conflict had not ripened into formal action. Hence, a well-grounded rule exists against such reasoning and in favor of the requirement of exhaustion of administrative remedies. See *Boynton v. Snelling*, 147 Vt. 564, 565–66, 522 A.2d 232, 233 (1987).

Petitioner's sole support for not exhausting her administrative remedy is that she is raising a "facial constitutional challenge" to Canon 6, and since only the courts can grant such relief, exhaustion is not required. *Hark v. Dragon*, 611 F.2d 11, 14 (2d Cir. 1979); see *Public Utilities Comm'n v. United States*, 355 U.S. 534, 540 (1958); *Delaware v. Bennett*, 697 F. Supp. 1366, 1376 (D. Del. 1988); *Wheeler v. Schweiker*, 547 F. Supp. 599, 604 (D. Vt. 1982). However, the present challenge to Canon 6 is not even remotely a facial challenge. Petitioner's complaint attacks the canon as it is applied and interpreted by her supervisor.[6] Her complaint does not suggest that Canon 6, by its very nature and essence, works an inexorable injustice upon her and those in her position. She assumes that the directions and requirements of her supervisor represent a definitive interpretation of Canon 6. Moreover, her petition strongly suggests that the allegations on which her petition is based represent the universal policy of the Vermont judiciary. There is absolutely no factual basis for such conclusions, because petitioner has

---

[6] Paragraph 9 of the petition—containing all of petitioner's factual allegations—begins, "Canon 6 *has been applied* to Petitioner in the following unlawful manner: . . . ." (Emphasis added.)

avoided the process designed to produce such a basis—the grievance procedures under the Personnel Policy.

Not only is the rule of exhaustion of administrative remedies through the grievance procedure sound from the point of view of fairness and effective personnel administration, the present petition is also an excellent example of the pitfalls inherent in proceeding in any other way. Petitioner's supervisor has yet to be heard from, and even if all of the allegations were proven, the only connection between the conduct complained of and the asserted unconstitutionality of Canon 6 is the allegation that petitioner's supervisor relied on that canon. We do not know whether the supervisor in fact relied on that canon or if she did, whether her interpretation was in accordance with any fair interpretation of its language. The grievance mechanism is not designed to settle constitutional issues,[7] but the grievance hearing would give a reviewing court a factual record on which to evaluate petitioner's claims, and then to decide in a proper setting whether a judgment on the constitutionality of Canon 6 was essential to resolution of the grievance.

## IV.

■ Petitioner's failure to pursue the grievance process is related to the final flaw in the present action, the prematurity of the constitutional claim. It is a tenet of this Court, and a universal holding elsewhere, that cases are to be determined, if possible, on nonconstitutional grounds. *State v. Clarke*, 145 Vt. 547, 551, 496 A.2d 164, 167 (1985); *State v. Elwell*, 131 Vt. 245, 246–47, 303 A.2d 134, 135 (1973). The principle is strongly rooted in the limited nature of judicial review and in the tradition of separation of powers whereby each branch of government uses its strongest powers only when it is necessary to do so. The present matter is a good illustration of the wisdom of the principle. A timely grievance proceeding might have resolved the present complaint without reaching the question of whether Canon 6 is unconstitutionally vague.

---

[7] Adjudication of the constitutionality of Canon 6 would be beyond the jurisdiction of the grievance tribunal. See *Westover v. Village of Barton Elec. Dep't*, 149 Vt. 356, 359, 543 A.2d 698, 700 (1988).

■ In sum, petitioner comes to this Court without making any attempt to settle her grievances through open and accessible personnel procedures. Further, assuming that those procedures were not a mandatory prelude to a court action, petitioner appears in this forum without seeking relief in superior court. If that forum were appropriate, she has named as defendants persons who do not have the power to discipline or suspend her. Assuming finally that proper defendants have been named, petitioner seeks redress under the Vermont Constitution without showing that a constitutional analysis or resolution is necessary. The State has adequately demonstrated that the petition should be dismissed.

*Petition dismissed.*