2008 VT 20



Colby v. Umbrella, Inc.
(2006-088)

 

2008 VT 20

 

[Filed 07-Mar-2008]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40
as well as formal revision before publication in the Vermont Reports. 
Readers are requested to notify the Reporter of Decisions, Vermont Supreme
Court, 109
 State Street, Montpelier, Vermont05609-0801
of any errors in order that corrections may be made before this opinion goes to
press.

 

 

                                                                    
2008 VT 20

 

                                                                  
No. 2006-088

 

 

Kerri L. Colby                                                                                 
Supreme Court

 

On Appeal
from

    
v.                                                                                                
Essex Superior Court

 

 

Umbrella, Inc., Jennifer
(Townsend)
Grant,                                   
February Term, 2007

Michelle Fay, and State of Vermont, Agency of

Human Services, Department for
Children and Families,

Child Development Division

 

 

Brian J. Grearson,
J.

 

Deborah T. Bucknam
and Jennifer Bucknam Black of Deborah Bucknam Associates, 

  St. Johnsbury, for Plaintiff-Appellant.

 

William H. Sorrell, Attorney
General, Montpelier,
and David R. Groff, Assistant Attorney

  General,
Waterbury, for
Defendants-Appellees.

 

 

PRESENT:  Reiber, C.J., Dooley, Johnson, Skoglund
and Burgess, JJ.

 

¶  1.          
JOHNSON, J.    In this suit for wrongful
termination, plaintiff Kerri Colby appeals the superior court order denying her
motion to amend the complaint and dismissing her claims against defendantState of Vermont. 
We reverse and remand.

 

¶  2.          
Defendant Umbrella, Inc. is a Vermont
corporation that provides support services to domestic violence victims and
operates a state-sponsored childcare resource center.  Plaintiff was
employed by Umbrella’s child-care-resource center from February 2000 to October
2002.  In October 2002, her employment with the center was
terminated. Plaintiff alleges that she was wrongfully terminated as a result
of: (1) expressing concerns about what she considered to be a
discriminatory new mission statement, and (2) her qualifiying
disability under the Vermont Fair Employment Practices Act (FEPA).  

¶  3.          
On May 6, 2005, plaintiff filed a complaint in Essex Superior Court
naming the following as defendants: Umbrella, Inc.; Umbrella’s executive
director, Michelle Fay; plaintiff’s direct supervisor, Jennifer Townsend; and
the Department for Children and Families (DCF) Child Development
Division.  Plaintiff claimed that she was wrongfully terminated in
violation of 42 U.S.C. § 1983, FEPA, and public policy.  On May 9,
2005, the State moved to dismiss the claims against it pursuant to Vermont Rule
of Civil Procedure 12(b)(6).  In response,
plaintiff filed a memorandum in opposition and a motion to amend the
complaint.  The amended complaint: (1) added Kimberly Keiser, Director of DCF’s Child Development Division as a defendant, (2)
alleged Keiser’s personal involvement in plaintiff’s termination, (3) alleged
the State was plaintiff’s employer for purposes of FEPA, and (4) added an
intentional infliction of emotional distress (IIED) claim against all
defendants.  On January 19, 2006, the superior court denied plaintiff’s
motion to amend and granted the 12(b)(6) motion
dismissing all claims against the State.  Plaintiff now appeals, claiming
that the court abused its discretion in denying her motion to amend and in
prematurely dismissing her § 1983, FEPA, and IIED claims against the
State.

 

¶  4.          
We begin with plaintiff’s argument that the court’s denial of her motion
to amend the complaint was an abuse of discretion.  Under the rules of
civil procedure, leave to amend the complaint “shall be freely given when
justice so requires.”  V.R.C.P. 15(a); Lillicrap
v. Martin, 156 Vt.
165, 170, 591 A.2d 41, 43-44 (1989).  In
considering motions under Rule 15(a), trial courts must be mindful of the Vermont tradition of
liberally allowing amendments to pleadings where there is no prejudice to the
other party.  Tracy v. Vinton Motors, Inc., 130 Vt. 512, 513, 269 A.2d 269, 271 (1971). 
“The principal reasons underlying the liberal amendment policy are (1) to
provide maximum opportunity for each claim to be decided on its merits rather
than on a procedural technicality, (2) to give notice of the nature of the
claim or defense, and (3) to enable a party to assert matters that were
overlooked or unknown to him at an earlier stage in the proceedings.”  Bevins
v. King, 143 Vt.
252, 255, 465 A.2d 282, 283 (1983).  In rare cases,  however,  denial of a motion under Rule 15(a)
may be justified based upon a consideration of the following factors:
“(1) undue delay; (2) bad faith; (3) futility of amendment; and (4)
prejudice to the opposing party.”  Perkins v. Windsor Hosp., 142 Vt. 305, 313, 455 A.2d 810, 815 (1982). 
On appeal, we review the trial court’s decision on a motion to amend for an
abuse of discretion.  Id.

 

¶  5.          
The trial court denied plaintiff’s motion to amend the complaint,
reasoning that despite plaintiff’s amendments, the complaint failed to state
any claim against the State for which relief could be granted and was therefore
futile.  See V.R.C.P. 12(b)(6).  In
determining whether a complaint can survive a motion to dismiss under Rule 12(b)(6), courts must take the factual allegations in the
complaint as true, and consider whether “it appears beyond doubt that there
exist no facts or circumstances that would entitle the plaintiff to
relief.”  Alger v. Dep’t of Labor & Indus., 2006 VT 115, ¶ 12,
___ Vt. ___, 917 A.2d 508 (quotations omitted).[1]  Motions
to dismiss for failure to state a claim are disfavored and are rarely
granted.  Gilman v. Me.Mut.
Fire Ins. Co., 2003 VT 55, ¶ 14, 175 Vt.
554, 830 A.2d 71 (mem.).

¶  6.          
Keeping in mind the generous standard governing Rule 15(a) motions to
amend, we first consider plaintiff’s addition of Keiser, director of the Child
Care Services Division, as a defendant in her proposed amended complaint. 
As the trial court noted, under Vermont
law, claims based on the actions of a state employee must generally lie against
the state, not the individual employee who allegedly committed the harm.  12 V.S.A. § 5602(a); Amy’s Enters. v. Sorrell,
174 Vt. 623,
624, 817 A.2d 612, 616 (mem.).  Plaintiff
alleged, in the proposed complaint, that Keiser “maliciously and wrongfully
terminated” her in violation of 42 U.S.C. § 1983.  In order to sustain a  § 1983 claim, “a
litigant . . . must first establish that the challenged
conduct constitutes ‘state action.’ ” United States v. Int’l Bhd. of Teamsters, 941 F.2d 1292, 1295-96 (2d Cir.
1991).  State action, in turn, requires both: (1) “an alleged
constitutional deprivation ‘caused by the exercise of some right or privilege
created by the State or by a rule of conduct imposed by the State or by a
person for whom the State is responsible,’ “ and
(2) “that ‘the party charged with the deprivation . . . be
a person who may fairly be said to be a state actor.’ “ Am.
Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Lugar v.
Edmondson Oil Co., 457 U.S.
922, 937 (1982)).  The trial court determined that plaintiff’s amendments
were futile because, in its estimation, she failed to make factual allegations
demonstrating that her termination involved state action. 

 

¶  7.          
We cannot agree with the court that plaintiff failed to allege
sufficient facts establishing state action to sustain a § 1983 claim.  To
fulfill the state-actor requirement under § 1983, the claimant must demonstrate
“personal involvement” of the defendant in the alleged constitutional
violations.  Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir.
1991).  Although plaintiff’s amended complaint specifically
asserted that Keiser had “personal involvement in the decision to wrongfully
terminate Plaintiff,” the court apparently ignored this allegation and focused
instead on statements in her affidavit attached to a memorandum in response to
the State’s opposition to the amendment to the effect that Keiser’s subordinate
was directly involved in her termination.  The court, however, was
required to “restrict its inquiry to the facts alleged in the [proposed]
complaint” when deciding whether the amendment was futile under Rule 12(b)(6), and simply should have taken plaintiff’s factual
allegation of Keiser’s personal involvement as true rather than determining
that allegations of personal involvement by subordinates are insufficient to
fulfill the state actor requirement.  See Wentworth v. Crawford,
174 Vt. 118,
121, 807 A.2d 351, 352 (2002).  The “complaint
need only set out a short and plain generalized statement of the claim from
which the defendant will be able to frame a responsive pleading,” 5B C. Wright
& A. Miller, Federal Practice and Procedure § 1357, at 564 (3d ed.
2004), and thus, despite the lack of detailed allegations regarding Keiser’s
role in the termination, adding her as a defendant was not a futile
amendment.  See, e.g., Boyce v. Nationwide Mut. Ins. Co., 842 F. Supp. 822, 824 (E.D.
Pa. 1994). 

 

¶  8.          
In its order denying the motion to amend, the trial court failed to
address plaintiff’s proposed amendments to her FEPA claim.  Plaintiff
argues that the amended complaint stated a legally cognizable claim under FEPA
and thereby met notice-pleading requirements under Rule 8(a).  Plaintiff
alleged in her amended complaint that she had a “qualified disability” under
FEPA at all times relevant to her claims, that the defendants failed to
reasonably accomodate that disability, and that
plaintiff’s termination was a “direct and proximate result of [her]
disability.”  Furthermore, she asserted that the State “is an employer
under the definition of employer under 21 V.S.A. § 495,” and that it was
therefore “liable for the wrongful actions of Defendants . . . in
the termination of Plaintiff.”  Again, in considering whether the court
erred in denying plaintiff’s motion to amend for futility, we are mindful of
the low threshold for withstanding a 12(b)(6) motion
to dismiss.  See Levinsky v. Diamond,
140 Vt. 595, 600-01, 442 A.2d 1277, 1280-81 (1982) (explaining that 12(b)(6) dismissal is inappropriate “unless it appears beyond
doubt that there exist no circumstances or facts which the plaintiff could
prove about the claim made in [her] complaint which would entitle [her] to
relief”). 

 

¶  9.          
Under FEPA, it is unlawful for “any employer . . .
to discriminate . . . against a qualified disabled
individual.”  21 V.S.A. § 495(a)(1).  While
plaintiff did not prove her “qualified disability,” in her amended complaint,
she was not required to at the pleading stage.  Instead, she set out a
plain, generalized statement that she had a disability, requested accommodation
from her employer, and was fired as a result of the disability.  Taking
these allegations and all reasonable inferences therefrom
as true, plaintiff adequately pleaded a FEPA claim.  Although the court
ultimately dismissed plaintiff’s FEPA claim against the State, concluding that
the State was not plaintiff’s employer as defined by 21 V.S.A.§
495, it did so prematurely and with disregard for the amendments in plaintiff’s
proposed complaint.  The standards for establishing a prima facie case
under FEPA are the same as those required by Title VII of the Civil Right
Act of 1964.  Robertson v. Mylan
Labs., Inc., 2004 VT 15, ¶ 16, 176 Vt.
356, 848 A.2d 310.  To establish that a defendant is an “employer”
under Title VII, a plaintiff must, as a threshold matter, show that she was
hired by the defendant.  United States
v. City of New York,
359 F.3d 83, 90-91 (2d Cir. 2004).  To prove that
she was hired, she must establish that she received direct or indirect
remuneration from the employer.  York v.
Ass’n of the Bar of N.Y., 286 F.3d 122, 125-26
(2d Cir. 2002).  Despite the trial court’s determination to the
contrary, plaintiff’s allegations that she was a childcare referral specialist
at Umbrella’s childcare resource center, and that Umbrella regarded her as its
at-will employee, do not conflict with her contention that the State was her
employer for purposes of FEPA.  In the amended complaint, plaintiff stated
that the DCF Child Development Division had supervisory and managerial control
over Umbrella’s childcare resource center and alleged that as an employer under
21 V.S.A. § 495, the State was liable for DCF’s
actions in wrongfully terminating her.  Furthermore, plaintiff alleged
that the Child Development Division was “significantly entwined with the
management of Defendant Umbrella’s child care resource center including being
involved in the hiring and termination of Defendant Umbrella’s staff.”  To
conclude that plaintiff’s amendments to the FEPA claim were futile, the court
must necessarily have dismissed her factual allegations that the Child
Development Division acted as an employer with respect to childcare resource
center staff by participating in hiring and termination decisions and asserting
managerial control over the center.  While plaintiff did not provide
evidence that the State remunerated her, at the pleading stage, plaintiff was
merely required to give notice to defendants of the claims against them. 
As such, we find that plaintiff’s amendments with respect to her FEPA claim
could survive a 12(b)(6) motion to dismiss and were
not, therefore, futile.  The trial court abused its discretion in denying
the motion to amend this claim.

 

¶  10.          
Finally, the trial court rejected plaintiff’s amendment adding an
intentional infliction of emotional distress claim, reasoning that plaintiff
had failed to allege any facts that could support such a claim against the
State.  An IIED claim can be sustained only where the plaintiff
demonstrates “outrageous conduct, done intentionally or with reckless disregard
of the probability of causing emotional distress, resulting in the suffering of
extreme emotional distress, actually or proximately caused by the outrageous
conduct.”   Boulton v. CLD Consulting Eng’rs, Inc., 175 Vt. 413, 427, 834 A.2d 37, 49 (2003)
(citing Crump v. P & C Food Mkts., Inc.,
154 Vt. 284, 296, 576 A.2d 441, 448 (1990)).  Termination of employment
alone cannot form the basis for an IIED claim.  Crump, 154 Vt. at 296, 576 A.2d at 448.  The manner in which the termination
is executed must evince “circumstances of oppressive conduct and abuse of a
position of authority vis-à-vis plaintiff” to support such a claim.  Id.  As the
trial court noted, plaintiff failed to allege any outrageous or oppressive
conduct in the manner of termination—an element of IIED.  Rather,
plaintiff continuously asserted in the amended complaint only that she was
“maliciously and wrongfully terminated,” and the conclusory
allegation that she “suffered intentional infliction of emotional distress” as
a result.  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236,
240 (2d Cir. 2002) (courts not required to accept as true “[c]onclusory allegations or legal conclusions masquerading as
factual conclusions” in 12(b)(6) analysis); see also Aranoff v. Bryan, 153 Vt. 59, 62-64, 569 A.2d
466, 468-69 (1989) (declining to accept as true conclusory
statements in complaint with no factual basis).  While the standard for
amending a complaint under Rule 15(a) is liberal, it is not entirely without
teeth.  As plaintiff’s amended complaint lacked any facts
supporting the elements of IIED, the trial court did not abuse its discretion
in finding the addition of the IIED claim to be futile on the basis that it
could not withstand a motion to dismiss under Rule 12(b)(6).

 

¶  11.          
Because we have analyzed the claims in plaintiff’s amended complaint under
the 12(b)(6) standard for dismissal for failure to
state a claim, we need not repeat that analysis with regard to the trial
court’s decision to dismiss all claims against the State.  The amended
complaint adequately stated § 1983 and FEPA claims against the State, and
therefore, we reverse the court’s decision with respect to those claims. 
As to any IIED claim against the State, it did not survive plaintiff’s motion
to amend the complaint. 

¶  12.          
As a final matter, we respond to the dissent’s concerns.  The
dissent reasons that plaintiff’s statement regarding Keiser’s “personal
involvement” in her termination is a legal conclusion, rather than a factual
allegation, and is thereby insufficient to make out the elements of a § 1983
claim.  This reasoning, however, is in direct conflict with Vermont Rule
of Civil Procedure 84, which incorporates appended forms as “sufficient under
the rules” and “intended to indicate the simplicity and brevity of statement
which the rules contemplate.”  Among the forms is a complaint for
negligence which provides the following illustration:

  1.  On
June 1, 1970, in a public highway called Church Street in Burlington, Vermont,
defendant negligently drove a motor vehicle against plaintiff who was then
crossing said highway.

 

  2.  As
a result plaintiff was thrown down and had plaintiff’s leg broken and was
otherwise injured, was prevented from transacting plaintiff’s business,
suffered great pain of body and mind, and incurred expenses for medical
attention and hospitalization in the sum of one thousand dollars. 

 

 
Where plaintiff demands judgment against defendant in the sum
of ten thousand dollars and costs.

 

V.R.C.P. Form
9.  By the dissent’s reasoning, this complaint, incorporated into our
rules of civil procedure, would be insufficient under our notice pleading rules
because the term “negligently” is a legal conclusion, and the complaint
includes no further factual allegations regarding the specific actions by the
defendant that the plaintiff alleges amounted to negligence.  Again, the
rules expressly indicate that such complaints are sufficient and thus, the
dissent’s reasoning is
flawed.            

¶  13.          
Furthermore, the beauty of our rules of civil procedure is that they
strike a fair balance, at the early stages of litigation, between encouraging
valid, but as yet underdeveloped, causes of action and discouraging baseless or
legally insufficient ones.  The complaint is a bare bones statement that
merely provides the defendant with notice of the claims against it.  See Lane
v. Town of Grafton, 166 Vt. 148, 150-52, 689 A.2d
455, 456-57 (1997).  Its purpose is to initiate the cause of
action, not prove the merits of the plaintiff’s case.  As such, the rules
allow a plaintiff to plead over if she has omitted essential elements and
require the court to take the plaintiff’s allegations as true on a motion to
dismiss, so as not to unfairly prejudice the plaintiff before she has any
opportunity to develop the case.  See V.R.C.P. 15(a); Amiot
v. Ames, 166 Vt.
288, 291, 693 A.2d 675, 677 (1997) (on a motion to dismiss, court takes all
factual allegations in complaint as true).  

 

¶  14.          
 Here, the State attempted to force a merits determination in the
early stages of litigation.  It used the wrong procedural vehicle for
doing so.  A motion to dismiss serves to identify an insufficient cause of
action, like the IIED claim here, where essential elements are not
alleged.  There were other procedural tools at the State’s disposal,
however, that it chose not to employ.  In a motion for summary judgment,
the defendant can present facts establishing that the plaintiff cannot prevail
on its claims, so that the court may dismiss the case with confidence if the plaintiff
fails to show that those facts are either disputed or have no force with
respect to the legal claims.  See V.R.C.P. 56.  If, as the State
alleges, plaintiffs’ claims are not supported by the facts, the State easily
could have moved for summary judgment at little expense after conducting
limited discovery—namely, taking plaintiff’s deposition.  See V.R.C.P.
26(f) (authorizing court on its own motion or on motion by either party to set
limitations on discovery); Iqbal, 490 F.3d at
158 (stating that court may in its discretion permit “some limited and tightly
controlled reciprocal discovery so that a defendant may probe for amplification
of a plaintiff’s claims and a plaintiff may probe such matters as a defendant’s
knowledge of relevant facts and personal involvement in challenged
conduct”).  Alternatively, a motion for more definite statement under Rule
12(e) would have served the goal of providing the information that the State
claims it needed to respond to plaintiff’s allegations.  The dissent, like
the State and court below, would decide the merits of the case at this early
stage, rather than allow the civil pleading rules to serve their intended
function.

Reversed
and remanded.   

 

__________________________________

Associate
Justice

 

 

¶ 15      BURGESS,
J., dissenting in part.  Surely plaintiff does not depend on
pre-trial discovery to discover her own disability.  Yet plaintiff fails,
after two tries, to allege what disables her, why she should be entitled to a
workplace accommodation for an affliction she does not identify, or why it was
unreasonable not to accommodate her unknown disability.  Nevertheless, the
majority endorses this empty pleading, along with the rest of plaintiff’s FEPA
and § 1983 complaints equally devoid of any alleged grounds for such claims, as
exemplifying the “beauty” of “underdeveloped” pleading supposedly allowed under
our rules of civil procedure.  Ante, ¶ 13. 
Not so enraptured by plaintiff’s factless complaint,
I respectfully dissent from the majority’s acceptance of claims based on
labels in lieu of substance.

 

¶
16          
Plaintiff’s amended complaint on these counts is not just
underdeveloped, but is so starved for substantive allegations that it barely amounts
to a spectre.  Plaintiff shrouds her complaint
with litigation labels, or catch-phrases, such as “wrongful termination” and
“qualified disability,” and a defendant’s “personal involvement” and failure to
make “reasonable accommodation,” but sets forth no facts leading to her
conclusions.  Like plaintiff’s IIED complaint, correctly found here to
lack a description of facts necessary to state the claim, ante, ¶ 10,
her FEPA and civil rights complaints are nothing more than wishful thinking
that fail to satisfy even the minimal requirement of Rule 8(a) to present “a
statement of circumstances, occurrences, and events in support of the claim
being presented.”  5  C. Wright & A.
Miller, Federal Practice & Procedure § 1215, at 194 (3d ed. 2004).  

¶
17          
The majority misperceives this criticism of the pleadings as a premature
rush to summary judgment on lack of evidence, but the problem with plaintiff’s
pleading is not evidentiary.  Rather, plaintiff’s problem is her omission
of any facts describing her own actual status or another’s actual conduct by
which the State or its employee could be liable to her.  As well explained
by the trial court, plaintiff’s amended complaint failed to state a claim
against Ms. Keiser under § 1983 and failed to state a claim against the State
under FEPA.[2] 
Plaintiff’s claims, as originally pled and as amended, were patently hollow and
were properly dismissed. 

 

¶
18          
Instead of plaintiff’s conclusions, our rules require “a short and plain
statement of the claim showing that the pleader is entitled to relief.”
 V.R.C.P. 8(a) (emphasis added).  While a party need not provide “a
specific and detailed statement of the facts which constitute a cause of
action,” he or she must provide “a statement clear enough ‘to give the
defendant fair notice of what the plaintiff’s claim is and the grounds
on which it rests.’ “  Reporter’s Notes, V.R.C.P.
8 (emphasis added) (citing the United States Supreme Court applying the same
standard under Federal Rule of Civil Procedure 8(a) in Conley v. Gibson,
355 U.S. 41 (1957)); see also Lane v. Grafton, 166 Vt. 148, 152-53, 689
A.2d 455, 457 (1997) (“[A] pleading is sufficient as long as it gives fair
notice of the claim and the grounds upon which it rests.” (emphasis added)).  This Court, along with a number of
other courts, also relies on Conley for the majority’s proposition that
“a complaint should not be dismissed for failure to state a claim unless it
appears beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief.”   355 U.S.
at 45-46 (emphasis added); see, e.g., Levinsky
v. Diamond, 140 Vt. 595, 600-01, 422 A.2d 1277, 1280-81 (1982) (citing Conley,
355 U.S. at 45-46)); see also Alger v. Vt. Dep’t of Labor & Indus.,
2006 VT 115, ¶ 12, __ Vt. __, 917 A.2d 508 (quoting Levinsky,
140 Vt. at 600-01, 422 A.2d at 1280-81).  

 

¶
19          
Recognizing the degradation in the substance of complaints, the United
States Supreme Court recently “retired” this “no set of facts” language,
concluding that it had “been questioned, criticized, and explained away long
enough.”  Bell Atl. Corp.
v. Twombly, 127 S. Ct.
1955, 1959 (2007).  Taken in its proper context, the Court
explained, the phrase described “the breadth of opportunity to prove what an
adequate complaint claims, not the minimum standard of adequate pleading to
govern a complaint’s survival.”  Id. at
1960.  If taken literally, however, as the majority does here, this
“no set of facts” language would improperly allow “a wholly conclusory
statement of claim” to survive “a motion to dismiss whenever the pleadings left
open the possibility that a plaintiff might later establish some ‘set of
[undisclosed] facts’ to support recovery.”  Id. at 1968.  Again considering the same Rule 8(a)
standard as followed in Vermont, the Supreme Court rejected this approach,
concluding that in light of the confusion generated by this part of the Conley
decision, the “no set of facts” language was “best forgotten as an incomplete,
negative gloss on an accepted pleading standard: once a claim has been stated
adequately, it may be supported by showing any set of facts consistent with the
allegations in the complaint.”  Id. at
1960.[3]


 

¶
20          
Just as an antitrust complaint in Twombly
was properly dismissed when it furnished “no clue” as to the participants in,
and the time and location of, an alleged “conspiracy” in restraint of trade,
127 S.Ct. at 1971, so too was plaintiff’s complaint
properly dismissed when it failed to allege any facts to show why she perceives
herself a state employee or how state actors were involved in any wrongful
action against her.  Yet, as predicted and criticized in Twombly, the majority here relies on the “no set of
facts” passage in Conley to allow plaintiff’s wholly conclusory
statements—without any statement of grounds required by Rule 8(a)—to survive a
proper motion to dismiss.  Rule 8(a) requires more.  As the Supreme
Court reiterated in Twombly, to state a valid
claim a party must provide more than “labels and conclusions, and a formulaic
recitation of  a cause of action’s elements will
not do.”  127 S. Ct. at
1965.  “Factual allegations must be enough to raise a right to
relief above the speculative level, on the assumption that all the allegations
in the complaint are true (even if doubtful in fact).”  Id.  It is with this common
sense clarification in mind that we should test the allegations in plaintiff’s
complaint.

 

¶
21          
In Count I of her amended complaint, plaintiff alleged that Ms. Keiser,
among others, maliciously and wrongfully terminated her employment in violation
of 42 U.S.C. § 1983.[4] 
In an apparent attempt to satisfy the “state action” requirement, plaintiff
proposed to amend her complaint to include the following statement: “[u]pon information and belief, Defendant Ms. Keiser had
personal involvement in the decision to wrongfully terminate [p]laintiff.”  This cannot be enough, because we cannot
know from the pleading what, if anything, this defendant is supposed to have
done wrong.  In any event, “[i]t is well
established that a state official’s mere approval of or acquiescence to the
conduct of a private party is insufficient to establish the nexus required for
state action.” Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442,
1450 (10th Cir. 1995) (citing cases).  As noted above, Rule 8(a) requires
not only that a party provide “ ‘fair notice’ of the
nature of the claim, but also [the] ‘grounds’ on which the claim
rests.”  Twombly, 127 S. Ct. at 1965 n.3
(emphasis added) (citing 5 C. Wright & A. Miller, supra, § 1202, at
94-95 (explaining that Rule 8(a) “contemplate[s] the statement of
circumstances, occurrences, and events in support of the claim presented” and
does not authorize a pleader’s ‘bare averment that he wants relief and is
entitled to it”)).

 

¶
22          
The majority nevertheless finds this statement
sufficient to state a claim against Ms. Keiser, reasoning that it must be taken
as true for purposes of a motion to dismiss.  The majority confuses
unfounded conclusions with allegations of fact.  While a plaintiff’s
“facts must be accepted as alleged, this does not automatically extend to bald
assertions, subjective characterizations and legal conclusions.”  DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53,
55 (1st Cir. 1999) (quotation and brackets omitted).  Plaintiff’s
assertion that Ms. Keiser “had personal involvement” in the decision to terminate
her is nothing more than a bare recitation of a necessary legal element of any
§ 1983 claim.  See, e.g., Moffitt v. Town of Brookfield, 950 F.2d
880, 886 (2d Cir. 1991) (to avoid summary judgment, plaintiff must show the
“personal involvement of defendants in alleged constitutional deprivations” as
a prerequisite to an award of damages under § 1983).  Plaintiff alleges no
facts or grounds whatsoever upon which to claim any actual personal
involvement on Ms. Keiser’s part beyond plaintiff’s vague and speculative
reference to some unattributed “information
and belief.”  What information, and what the basis is for plaintiff’s
belief, remains a mystery.  Plaintiff’s complaint offers not a single
suggestion as to when, where, or how Ms. Keiser was allegedly involved in
plaintiff’s termination.[5] 
See DM Research, 170 F.3d at 56 (“[T]he factual allegations must be
specific enough to justify drag[ging]
a defendant past the pleading threshold.” (quotation
and citation omitted)).  Plaintiff’s claim stands as nothing but a bald conclusory assertion and it need not be accepted as true.

¶
23          
Indeed, we note that even in her brief, plaintiff cannot say how, or
even if, Ms. Keiser was personally involved in her termination.  According
to plaintiff, there is “some indication that Ms. Keiser may have been
involved,” and she believes that further discovery will show that Ms. Keiser
was involved.  Plaintiff contends that, on her beliefs alone, she is
entitled to conduct discovery to determine if Ms. Keiser was properly named as
a defendant. 

¶
24          
Plaintiff misunderstands the requirements of Rule 8(a).  “The need
at the pleading stage for allegations plausibly suggesting” that the elements
of a claim have been met “reflects the threshold requirement of Rule 8(a)(2) that the ‘plain statement’ possess enough heft to ‘sho[w] that the pleader is entitled to relief.’ “  Twombly, 127 S. Ct. at 1966.  As one court has explained, 

[the] concept of “the pleading threshold” is critical. The
complaint should include “a short and plain statement” of the claim showing
that the pleader is entitled to relief, so it need not include evidentiary
detail.  On the other hand, the price of entry, even to discovery, is for
the plaintiff to allege a factual predicate concrete enough to warrant
further proceedings, which may be costly and burdensome.  Conclusory allegations in a complaint, if they stand alone,
are a danger sign that the plaintiff is engaged in a fishing expedition.

DM Research, 170 F.3d at 55 (citation omitted). 
Plaintiff’s pleading lacks heft because it lacks facts.  Plaintiff’s
admission that she needs discovery because she does not know if Ms. Keiser was
involved not only warns, but confirms, that she is purely on a fishing expedition.

 

¶
25          
The decision in DM Research is
instructive.  In that case, the plaintiffs alleged in their complaint that
the two defendants had “conspired” with one another, and they argued that for
purposes of a motion to dismiss, the court must accept this allegation as true,
however implausible it might be.  Id. 
The court rejected this notion, finding that terms like “conspiracy,” or even
“agreement,” were “border-line: they might well be sufficient in conjunction
with a more specific allegation—for example, identifying a written agreement or
even a basis for inferring a tacit agreement—but a court is not required to
accept such terms as a sufficient basis for a complaint.”  Id. at 56.  Far from being a “technical mouse-trap for an
unduly terse plaintiff,” the court explained, the ongoing nature of the
litigation process, even at the pleading stage, provides plaintiffs with ample
opportunity to remedy the shortcomings of their complaints.  Id. 
Plaintiffs in DM Research were advised of the thrust of the defendant’s
arguments for dismissal, and were free to respond to the motion to dismiss by
providing “additional facts to make its complaint concrete and plausible,”  id., but, as in the instant case, failed to do
so.  They added nothing in their opposition to the motion to dismiss, nor even in their brief on appeal, to provide factual
support for their complaint.  Id. 
As the court observed, “the discovery process is not available where, at the
complaint stage, a plaintiff has nothing more than unlikely speculations. 
While this may mean that a civil plaintiff must do more detective work in
advance, the reason is to protect society from the costs of highly unpromising
litigation.”  Id. 


 

¶
26          
This reasoning applies with equal force here. 
Plaintiff had several opportunities to allege sufficient facts to support her §
1983 claim.  Put on notice about the factual shortcomings of her
allegations by defendants’ motion to dismiss, plaintiff failed to remedy her
pleading deficiencies, and her conclusory allegations
simply do not suffice to state a claim under Rule 8(a).  As recently
reiterated in Twombly, Rule 8 “still requires
a ‘showing,’ rather than a blanket assertion, of entitlement to
relief.”  127 S.Ct. at 1965 n.3 (emphasis
added).  Plaintiff’s 42 U.S.C. § 1983 claim against Ms. Kesier was properly dismissed.[6] 

¶
27          
Plaintiff’s FEPA claim is equally deficient.  To establish a claim
under FEPA, a plaintiff must allege that she was a qualified disabled
individual and that she was discharged because of her disability.  See 21
V.S.A. § 495; Lowell v. Int’l Bus. Machs. Corp., 955 F. Supp. 300, 303 (D. Vt. 1997).  In her
proposed amended complaint, plaintiff states that she has a “qualified disability,”
that defendants failed to reasonably accommodate her disability, and that
defendants “used [her] disability as a pretense for their malicious and
wrongful termination of Plaintiff’s employment in violation of 21 V.S.A.
§ 495.”[7] 
Alternatively, plaintiff states that her termination was “a direct and
proximate result” of her disability.  But what
disability? What accommodation?  What pretense?  Plaintiff
does not say. 

 

¶
28          
As with plaintiff’s proposed § 1983 claim, her
FEPA claim consists of nothing but conclusions and labels.  Such
allegations do not provide defendant with notice as to the particular nature of
plaintiff’s claim, they merely restate, or attempt to restate, legal elements
required for any FEPA claim.  Plaintiff does not, or cannot, identify the
nature of her alleged disability.  Plaintiff is not required to prove that
she has a disability to get past a motion to dismiss, but Rule 8(a) still
requires that she allege a disability so that the State can formulate a
response to her allegation.  See Twombly,
127 S. Ct. at 1965 n.3 (“Without some factual allegation in the complaint, it
is hard to see how a claimant could satisfy the requirement of providing not
only ‘fair notice’ of the nature of the claim, but also ‘grounds’ on which the
claim rests.”); see also 21 V.S.A. § 495d(6) (defining term “qualified
individual with a disability”); State v. G.S. Blodgett Co., 163 Vt. 175,
181, 656 A.2d 984, 988 (1995) (explaining that to be considered a “qualified
handicapped individual,” a plaintiff must demonstrate the ability to perform
the essential functions of the job with reasonable accommodation). 

¶
29          
Indeed, plaintiff fails to allege any facts at
all.  She does not describe the reasonable accommodation allegedly asked
for, nor does she describe the circumstances of the State’s alleged refusal to
accommodate her.  Plaintiff similarly fails to state how, why, or when the
State allegedly used her disability as the basis—”pretextual”
or not—for terminating her.  Seeking to respond to such allegations, a
defendant “would have little idea where to begin.”  Twombly,
127 S. Ct. at 1971 
n.10.  Allowing such a claim under Rule 8(a) is like accepting a
negligence claim alleging nothing more than defendant owed plaintiff some undescribed duty of care, and that he breached that duty in
some mysterious way resulting in some unknown damage.  Rule 8(a) requires
more. 

 

¶
30          
Plaintiff further fails to allege any grounds by which to claim that the
State was her employer.  Indeed, contrary to the majority’s contention,
plaintiff does not even allege in a conclusory
fashion in her amended complaint that the State was her employer.  Cf. ante,
¶ 9.   Instead, plaintiff asserted that “Defendant, Vermont
Department of Social and Rehabilitation Services, is an employer under
the definition of employer under 21 V.S.A. § 495 and is liable for the wrongful
actions of Defendants Umbrella, Ms. Keiser, Ms. Fay and Ms. Grant in the
termination of Plaintiff.”  (Emphasis added.)  Assuming the
Department is “an employer” under § 495(d)(1), it
hardly means that it is plaintiff’s employer.  The latter half of
this allegation—that the Department is “liable for the wrongful actions” of the
other defendants—is nothing more than a legal conclusion, without a fact set
forth as to why this could be so.  It is not a factual allegation and it
need not be accepted as true.  

¶
31          
The only other allegations in plaintiff’s amended complaint relevant to
her identification of an employer liable to her under FEPA might be her
assertions that (1) “Defendant Umbrella claimed Plaintiff was an at-will
employee and therefore could be terminated at will”; (2) plaintiff’s direct
supervisor was an Umbrella employee; (3) Ms. Keiser “had supervisory and
managerial control over Defendant Umbrella’s child care resource center;” and
(4) “Defendant State of Vermont Agency of Human Services Department for
Children and Families, Child Development Division (‘CDD’) is an agency of the
State of Vermont with supervisory and managerial control over Umbrella’s child
care resource center.”  None of these allegations, taken separately or as
a whole, provide a sufficient factual predicate of state employment to support
plaintiff’s FEPA claim against the State.

 

¶
32          
It is unclear how the majority concludes that plaintiff sufficiently
alleges that the State was her employer under 21 V.S.A. § 495.  Ante, ¶ 9.  Assuming, as claimed in the amended
complaint, that DCF or its employee had supervisory and managerial control over
plaintiff’s Umbrella worksite, those facts simply do
not describe an employment relationship between the State and plaintiff. 
Clearly plaintiff does not allege any hiring or payment by the State, both
factors recognized by the majority as threshold elements for establishing an
employment relationship.  Ante, ¶ 9 (citing United States v.
City of New York, 359 F.3d 83, 90-91 (2d Cir. 2004)); see also O’Connor
v. Davis, 126 F.3d 112, 115-16 (2d Cir. 1997) (explaining that “[w]here no
financial benefit is obtained by the purported employee from the employer, no
‘plausible’ employment relationship of any sort can be said to exist because
although compensation by the putative employer to the putative employee in
exchange for his services is not a sufficient condition, . . . it is an
essential condition to the existence of an employer-employee relationship”
(citation omitted)).  Plaintiff never actually alleges that the State
supervised or managed her.  Although other tests exist to determine
“employee” status under Title VII, plaintiff alleged no facts to support
application of any of them.  See, e.g., King v. Dalton, 895 F.
Supp. 831, 837-38 (E.D. Va. 1995) (discussing various tests employed to
determine “employee” status under Title VII); see also Brug
v. Nat’l Coal. for the Homeless, 45 F. Supp. 2d 33, 36-37 (D.D.C. 1999)
(stating that Title VII covers only those in a “direct employment relationship
with a government employer,” and most important factor in determining if
individual had sufficiently direct employment relationship with federal
government is federal government’s right to control plaintiff’s work); Mares
v. Marsh, 777 F.2d 1066, 1069 (5th Cir. 1985) (explaining that just because
certain grocery baggers who worked on military base had to comply with certain
Army regulations concerning dress and conduct, that was “not enough to make
them employees of the Army”).

 

¶
33          
It is no answer to say that plaintiff’s claim
should survive, regardless of its lack of asserted facts, merely because it
does not appear beyond a doubt that there exist no facts or circumstances that
plaintiff could prove entitling her to relief under FEPA.  Ante, ¶ 8.  As pointed out above, this purported
standard, borrowed from Conley and since disavowed by its propounding
authority in Twombly, was never intended to be
a substitute for substantial pleadings.   It was for empty pleadings
such as plaintiff’s that Twombly disowned the
“no possible facts” passage in Conley still mistakenly relied on by the
majority to sustain plaintiff’s complaint.  Allowing such complaints,
explains Twombly, would simply settle for “Mr.
Micawber’s optimism” in place of substance, and
“would dispense with any showing of a ‘reasonably founded hope’ “ that a plaintiff would be able to make a case.[8]  127 S. Ct. at 1969. 
We should, like Twombly, stop the erosion of
pleadings under Rule 8(a) and stop compelling the wasted time of human beings
in pretrial discovery when, even after repleading,
plaintiff’s fails to describe facts amounting to a legally plausible cause of
action.[9]

 

¶
34          
Contrary to the expectations of plaintiff and the majority, Rule 8(a)
does not purport to offer a passport to pretrial discovery in return for simply
claiming the possibility of a cause of action.  That evidence exists or
might later be discovered from defendant to support plaintiff’s cause of action
is immaterial to the question of whether the factual allegations in her
complaint were sufficient to state a claim under the rule.  Id. at 1968.  Plaintiff’s conclusory
allegations were plainly insufficient here, and her claims against Ms. Keiser
and the State were properly dismissed by the trial court.  

¶
35          
I would affirm the trial court’s dismissal of all counts, and am
authorized to state that Justice Skoglund joins in
this dissent.

 

________________________________

Associate
Justice

 

 











[1] 
The dissent argues that the United States Supreme Court’s recent decision in Bell
Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007), overrules this language that
we originally adopted from its decision in Conley v. Gibson, 355 U.S.
41, 47 (1957), and thereby creates a new and heightened pleading
standard.  Whether that is the case, and it is arguable in light of
conflicting interpretations of Twombly, see,
e.g., Iqbal v. Hasty, 490 F.3d 143,
155-59 (2d Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3349 (U.S. Dec.
17, 2007), we have relied on the Conley standard for over twenty years,
and are in no way bound by federal jurisprudence in interpreting our state
pleading rules.  See Levinsky v.
Diamond, 140 Vt. 595, 600-01, 442 A.2d 1277, 1280-81 (1982) (citing Conley,
355 U.S.
at 45-46).  We recently reaffirmed our minimal notice pleading standard in
Alger, 2006 VT 115,  ¶ 12, and are unpersuaded by the dissent’s argument that we should now
abandon it for a heightened standard. 





[2] 
Having fully considered, and finding futile, the content of plaintiff’s amended
allegations, the trial court’s refusal to formally accept the amended complaint
as filed was immaterial. 





[3] 
Contrary to the majority’s assertion, Twombly
is not read to overrule Conley, or to impose a “new and heightened
pleading standard.”  Cf. ante, ¶ 5 n.1.  Nor must Twombly be read to interject a “flexible
‘plausibility standard’ ”of amplified factual pleadings for some complaints,
but not for others, as interpreted in Iqbal
v. Hasty, cited by the majority as an example of uncertainty in the meaning
of Twombly.  See Iqbal,
490 F.3d 143,157-58 (2d Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3349
(U.S.
Dec. 17, 2007) (No. 07-827).  In what some might view as a hyperliteral critique of Twombly,
the Second Circuit Court of Appeals in Iqbal
appears to borrow more uncertainty than is actually presented in Twombly.  For example, Iqbal
cites as puzzling Erickson v. Pardus, 127 S.
Ct. 2197 (2007), decided after Twombly, but
still relying on Twombly for the established
proposition that “[s]pecific facts are not necessary”
for a Rule 8(a) statement that “need only give the defendant fair notice of
what the . . . claim is and the grounds upon which it rests.”  Id. at 2200.   Confusion arises only for the overly
exact reader.  While detailed facts may not be required, certainly some
facts must be alleged for the English language to achieve a “claim” and a
description of its “grounds.”  See, e.g., V.R.C.P. Form 9 (cited ante,
¶ 12).  As set forth above, the Twombly Court only
clarified what the Conley
 Court intended its “no set of facts” language to
mean when it authored the phrase, and confirmed that the phrase had been taken
out of context and misinterpreted by courts like ours since Conley was
decided.  Twombly simply reiterated, and
returned to, the basic requirements of Rule 8(a).





[4] 
Plaintiff originally alleged that she was an at-will employee of Umbrella and
that Umbrella was a “state actor” for purposes of 42 U.S.C. § 1983 by virtue of
being subject to state regulation, but concedes in her brief that state
regulation does not a state actor make.  In her amended complaint,
plaintiff no longer claimed to be an employee of Umbrella, although she did not
identify any other employer.  





[5] 
The majority’s reference to Rule of Civil Procedure Form 9, ante,
¶ 12, as a rule-sanctioned example of adequate notice pleading is facially
inapposite to plaintiff’s pleadings.  Form 9 expressly complains that a
defendant carelessly drove a car into a pedestrian.  No such clear
declaration of wrongdoing appears in the instant complaint where plaintiff
generally claims, but refuses to describe, “personal
involvement” by Ms. Keiser in her termination.  “Involvement” could
suppose, among other inferences, that Ms. Keiser somehow ordered, or
authoritatively advised or approved the firing, some of which conduct might,
but not necessarily, be culpable.  “Involvement” could just as easily be
that Ms. Keiser was merely told about, was advised, or suggested or even agreed
that plaintiff should be fired, none of which, without more, would necessarily
render the defendant liable.  Plaintiff fails to plead any wrongful act on
Ms. Keiser’s part.





[6] 
To the extent that plaintiff seeks to challenge the dismissal of her § 1983
claim against the State or DCF’s Child Development
Division (CDD), she waived such arguments by failing to raise them on
appeal.  We note, however, that it is well settled that the State is not a
“person” subject to suit under § 1983, and that to the extent plaintiff sought
damages from the CDD  due to Ms. Keiser’s alleged actions, “respondeat superior cannot form the basis for a § 1983
claim.”  Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d
Cir. 1998).    





[7] 
The statute speaks of a “qualified disabled individual,” 21 V.S.A. § 495, and it appears that this is what plaintiff is
referencing when she refers to her “qualified disability.” 





[8] 
Exemplary of Wilkins Micawber’s manic optimism in
Charles Dickens’ novel “David Copperfield,” he famously declares in Chapter 52:
“Now, welcome poverty! . . . Welcome misery, welcome houselessness,
welcome hunger, rags, tempest, and beggary!  Mutual confidence will
sustain us to the end!”  Applying the actual pleading requirements of Rule
8(a), rather than the majority’s dilution, plaintiff’s factually impoverished
complaint should require more to survive a motion to dismiss than optimistic
confidence in her planned discovery expedition.  





[9]  It is also
noteworthy that the majority’s view effectively undoes more than Rule
8(a).  Since no informed answer can ever be filed in response to
complaints like plaintiff’s FEPA and § 1983 claims, denials need be merely
automatic.  Automatic denial obviates the need for much of Rule 8(b) that
promotes answers to “meet the substance of the averments” and particularly
respond to particular averments, since the need for particularity in a
complaint is read out of Rule 8(a) by the majority.  No longer recognizing
Rule 12(b)(6) motions to dismiss except for legal
impossibility, and not for inadequate grounds, the majority justifies denials
in all instances as “without knowledge or information sufficient to form a
belief as to the truth of an averment . . . .”  V.R.C.P.
8(b).   What had expressly been a defendant’s option under
Rule 12(e) to request a more definite statement in response to a vague
complaint, the majority now mandates as a remedy instead of a motion to
dismiss.  The imagined remedy of a more definite statement is, of course,
rendered a nullity by the majority’s holding that a vaporific
complaint, like plaintiff’s, is already definite enough.  Thus, the
majority sends Rule 12(e) to join its companions 8(a), 8(b) and 12(b)(6) in the
repository of written, but no longer observed, rules of civil procedure.