2008 VT 20

# Kerri L. Colby v. Umbrella, Inc., Jennifer (Townsend) Grant, Michelle Fay, and State of Vermont, Agency of Human Services, Department for Children and Families, Child Development Division

[955 A.2d 1082]

No. 06-088

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed March 7, 2008

Appellees' Motion to Amend Denied April 2, 2008
Appellees' Motion to Correct Granted April 25, 2008

Deborah T. Bucknam and Jennifer Bucknam Black of Deborah Bucknam Associates, St. Johnsbury, for Plaintiff-Appellant.

William H. Sorrell, Attorney General, Montpelier, and David R. Groff, Assistant Attorney General, Waterbury, for Defendants-Appellees.

¶ 1. Johnson, J. In this suit for wrongful termination, plaintiff Kerri Colby appeals the superior court order denying her motion to amend the complaint and dismissing her claims against defendant State of Vermont. We reverse and remand.

¶ 2. Defendant Umbrella, Inc. is a Vermont corporation that provides support services to domestic violence victims and operates a state-sponsored childcare resource center. Plaintiff was employed by Umbrella's child-care-resource center from February 2000 to October 2002. In October 2002, her employment with the center was terminated. Plaintiff alleges that she was wrongfully terminated as a result of: (1) expressing concerns about what she considered to be a discriminatory new mission statement, and (2) her qualifying disability under the Vermont Fair Employment Practices Act (FEPA).

¶ 3. On May 6, 2005, plaintiff filed a complaint in Essex Superior Court naming the following as defendants: Umbrella, Inc.; Umbrella's executive director, Michelle Fay; plaintiff's direct supervisor, Jennifer Townsend; and the Department for Children and Families (DCF) Child Development Division. Plaintiff claimed that she was wrongfully terminated in violation of 42 U.S.C. § 1983, FEPA, and public policy. On May 9, 2005, the State moved to dismiss the claims against it pursuant to Vermont Rule of Civil Procedure 12(b)(6). In response, plaintiff filed a memorandum in opposition and a motion to amend the complaint. The amended complaint: (1) added Kimberly Keiser, Director of DCF's Child

Development Division as a defendant, (2) alleged Keiser's personal involvement in plaintiff's termination, (3) alleged the State was plaintiff's employer for purposes of FEPA, and (4) added an intentional infliction of emotional distress (IIED) claim against all defendants. On January 19, 2006, the superior court denied plaintiff's motion to amend and granted the 12(b)(6) motion dismissing all claims against the State. Plaintiff now appeals, claiming that the court abused its discretion in denying her motion to amend and in prematurely dismissing her § 1983, FEPA, and IIED claims against the State.

■ ■ ¶ 4. We begin with plaintiff's argument that the court's denial of her motion to amend the complaint was an abuse of discretion. Under the rules of civil procedure, leave to amend the complaint "shall be freely given when justice so requires." V.R.C.P. 15(a); *Lillicrap v. Martin*, 156 Vt. 165, 170, 591 A.2d 41, 43-44 (1989). In considering motions under Rule 15(a), trial courts must be mindful of the Vermont tradition of liberally allowing amendments to pleadings where there is no prejudice to the other party. *Tracy v. Vinton Motors, Inc.*, 130 Vt. 512, 513, 296 A.2d 269, 271 (1972). "The principal reasons underlying the liberal amendment policy are (1) to provide maximum opportunity for each claim to be decided on its merits rather than on a procedural technicality, (2) to give notice of the nature of the claim or defense, and (3) to enable a party to assert matters that were overlooked or unknown to him at an earlier stage in the proceedings." *Bevins v. King*, 143 Vt. 252, 255, 465 A.2d 282, 283 (1983). In rare cases, however, denial of a motion under Rule 15(a) may be justified based upon a consideration of the following factors: "(1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." *Perkins v. Windsor Hosp. Corp.*, 142 Vt. 305, 313, 455 A.2d 810, 815 (1982). On appeal, we review the trial court's decision on a motion to amend for an abuse of discretion. *Id.*

■ ■ ¶ 5. The trial court denied plaintiff's motion to amend the complaint, reasoning that despite plaintiff's amendments, the complaint failed to state any claim against the State for which relief could be granted and was therefore futile. See V.R.C.P. 12(b)(6). In determining whether a complaint can survive a motion to dismiss under Rule 12(b)(6), courts must take the factual allegations in the complaint as true, and consider whether "it appears beyond doubt that there exist no facts or circumstances that

6

would entitle the plaintiff to relief." *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 917 A.2d 508 (quotations omitted).[1] Motions to dismiss for failure to state a claim are disfavored and are rarely granted. *Gilman v. Me. Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 14, 175 Vt. 554, 830 A.2d 71 (mem.).

¶ 6. Keeping in mind the generous standard governing Rule 15(a) motions to amend, we first consider plaintiff's addition of Keiser, director of the Child Care Services Division, as a defendant in her proposed amended complaint. As the trial court noted, under Vermont law, claims based on the actions of a state employee must generally lie against the state, not the individual employee who allegedly committed the harm. 12 V.S.A. § 5602(a); *Amy's Enters. v. Sorrell*, 174 Vt. 623, 624, 817 A.2d 612, 616 (2002) (mem.). Plaintiff alleged, in the proposed complaint, that Keiser "maliciously and wrongfully terminated" her in violation of 42 U.S.C. § 1983. In order to sustain a § 1983 claim, "a litigant . . . must first establish that the challenged conduct constitutes 'state action.' " *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991). State action, in turn, requires both: (1) "an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' " *and* (2) "that 'the party charged with the deprivation . . . be a person who may fairly be said to be a state actor.' " *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The trial court determined that plaintiff's amendments were futile because, in its estimation, she failed to make factual allegations demonstrating that her termination involved state action.

---

[1] The dissent argues that the United States Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63, 127 S. Ct. 1955, 1969 (2007), overrules this language that we originally adopted from its decision in *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and thereby creates a new and heightened pleading standard. Whether that is the case, and it is arguable in light of conflicting interpretations of *Twombly*, see, e.g., *Iqbal v. Hasty*, 490 F.3d 143, 155-59 (2d Cir. 2007), *petition for cert. filed*, 76 U.S.L.W. 3349 (U.S. Dec. 17, 2007), we have relied on the *Conley* standard for over twenty years, and are in no way bound by federal jurisprudence in interpreting our state pleading rules. See *Levinsky v. Diamond*, 140 Vt. 595, 600-01, 442 A.2d 1277, 1280-81 (1982) (citing *Conley*, 355 U.S. at 45-46). We recently reaffirmed our minimal notice pleading standard in *Alger*, 2006 VT 115, ¶ 12, and are unpersuaded by the dissent's argument that we should now abandon it for a heightened standard.

¶ 7. We cannot agree with the court that plaintiff failed to allege sufficient facts establishing state action to sustain a § 1983 claim. To fulfill the state-actor requirement under § 1983, the claimant must demonstrate "personal involvement" of the defendant in the alleged constitutional violations. *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991). Although plaintiff's amended complaint specifically asserted that Keiser had "personal involvement in the decision to wrongfully terminate Plaintiff," the court apparently ignored this allegation and focused instead on statements in her affidavit attached to a memorandum in response to the State's opposition to the amendment to the effect that Keiser's subordinate was directly involved in her termination. The court, however, was required to "restrict its inquiry to the facts alleged in the [proposed] complaint" when deciding whether the amendment was futile under Rule 12(b)(6), and simply should have taken plaintiff's factual allegation of Keiser's personal involvement as true rather than determining that allegations of personal involvement by subordinates are insufficient to fulfill the state actor requirement. See *Wentworth v. Crawford & Co.*, 174 Vt. 118, 121, 807 A.2d 351, 352 (2002). The "complaint need only set out a short and plain generalized statement of the claim from which the defendant will be able to frame a responsive pleading," 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 564 (3d ed. 2004), and thus, despite the lack of detailed allegations regarding Keiser's role in the termination, adding her as a defendant was not a futile amendment. See, e.g., *Boyce v. Nationwide Mut. Ins. Co.*, 842 F. Supp. 822, 824 (E.D. Pa. 1994).

¶ 8. In its order denying the motion to amend, the trial court failed to address plaintiff's proposed amendments to her FEPA claim. Plaintiff argues that the amended complaint stated a legally cognizable claim under FEPA and thereby met notice-pleading requirements under Rule 8(a). Plaintiff alleged in her amended complaint that she had a "qualified disability" under FEPA at all times relevant to her claims, that the defendants failed to reasonably accommodate that disability, and that plaintiff's termination was a "direct and proximate result of [her] disability." Furthermore, she asserted that the State "is an employer under the definition of employer under 21 V.S.A. § 495," and that it was therefore "liable for the wrongful actions of Defendants . . . in the termination of Plaintiff." Again, in considering whether the court erred in denying plaintiff's motion

to amend for futility, we are mindful of the low threshold for withstanding a 12(b)(6) motion to dismiss. See *Levinsky v. Diamond*, 140 Vt. 595, 600-01, 442 A.2d 1277, 1280-81 (1982) (explaining that 12(b)(6) dismissal is inappropriate "unless it appears beyond doubt that there exist no circumstances or facts which the plaintiff could prove about the claim made in [her] complaint which would entitle [her] to relief").

¶ 9. Under FEPA, it is unlawful for "any employer . . . to discriminate . . . against a qualified disabled individual." 21 V.S.A. § 495(a)(1). While plaintiff did not prove her "qualified disability" in her amended complaint, she was not required to at the pleading stage. Instead, she set out a plain, generalized statement that she had a disability, requested accommodation from her employer, and was fired as a result of the disability. Taking these allegations and all reasonable inferences therefrom as true, plaintiff adequately pleaded a FEPA claim. Although the court ultimately dismissed plaintiff's FEPA claim against the State, concluding that the State was not plaintiff's employer as defined by 21 V.S.A. § 495, it did so prematurely and with disregard for the amendments in plaintiff's proposed complaint. The standards for establishing a prima facie case under FEPA are the same as those required by Title VII of the Civil Rights Act of 1964. *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 16, 176 Vt. 356, 848 A.2d 310. To establish that a defendant is an "employer" under Title VII, a plaintiff must, as a threshold matter, show that she was hired by the defendant. *United States v. City of New York*, 359 F.3d 83, 90-91 (2d Cir. 2004). To prove that she was hired, she must establish that she received direct or indirect remuneration from the employer. *York v. Ass'n of Bar of N.Y.*, 286 F.3d 122, 125-26 (2d Cir. 2002). Despite the trial court's determination to the contrary, plaintiff's allegations that she was a childcare referral specialist at Umbrella's childcare resource center, and that Umbrella regarded her as its at-will employee, do not conflict with her contention that the State was her employer for purposes of FEPA. In the amended complaint, plaintiff stated that the DCF Child Development Division had supervisory and managerial control over Umbrella's childcare resource center and alleged that as an employer under 21 V.S.A. § 495 the State was liable for DCF's actions in wrongfully terminating her. Furthermore, plaintiff alleged that the Child Development Division was "significantly entwined with the management of Defendant Um-

brella's child care resource center including being involved in the hiring and termination of Defendant Umbrella's staff." To conclude that plaintiff's amendments to the FEPA claim were futile, the court must necessarily have dismissed her factual allegations that the Child Development Division acted as an employer with respect to childcare resource center staff by participating in hiring and termination decisions and asserting managerial control over the center. While plaintiff did not provide evidence that the State remunerated her, at the pleading stage, plaintiff was merely required to give notice to defendants of the claims against them. As such, we find that plaintiff's amendments with respect to her FEPA claim could survive a 12(b)(6) motion to dismiss and were not, therefore, futile. The trial court abused its discretion in denying the motion to amend this claim.

¶ 10. Finally, the trial court rejected plaintiff's amendment adding an intentional infliction of emotional distress claim, reasoning that plaintiff had failed to allege any facts that could support such a claim against the State. An IIED claim can be sustained only where the plaintiff demonstrates "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Boulton v. CLD Consulting Eng'rs, Inc.*, 175 Vt. 413, 427, 834 A.2d 37, 49 (2003) (quoting *Crump v. P & C Food Mkts., Inc.*, 154 Vt. 284, 296, 576 A.2d 441, 448 (1990)). Termination of employment alone cannot form the basis for an IIED claim. *Crump*, 154 Vt. at 296, 576 A.2d at 448. The manner in which the termination is executed must evince "circumstances of oppressive conduct and abuse of a position of authority vis-à-vis plaintiff" to support such a claim. *Id.* As the trial court noted, plaintiff failed to allege any outrageous or oppressive conduct in the manner of termination — an element of IIED. Rather, plaintiff continuously asserted in the amended complaint only that she was "maliciously and wrongfully terminated," and the conclusory allegation that she "suffered intentional infliction of emotional distress" as a result. *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (courts not required to accept as true "[c]onclusory allegations or legal conclusions masquerading as factual conclusions" in 12(b)(6) analysis); see also *Aranoff v. Bryan*, 153 Vt. 59, 62-64, 569 A.2d 466, 468-69 (1989) (declining to accept as true conclusory statements in complaint

with no factual basis). While the standard for amending a complaint under Rule 15(a) is liberal, it is not entirely without teeth. As plaintiff's amended complaint lacked *any* facts supporting the elements of IIED, the trial court did not abuse its discretion in finding the addition of the IIED claim to be futile on the basis that it could not withstand a motion to dismiss under Rule 12(b)(6).

¶ 11. Because we have analyzed the claims in plaintiff's amended complaint under the 12(b)(6) standard for dismissal for failure to state a claim, we need not repeat that analysis with regard to the trial court's decision to dismiss all claims against the State. The amended complaint adequately stated a § 1983 claim against defendant Keiser and a FEPA claim against the State, and therefore, we reverse the court's decision with respect to those claims. As to any IIED claim against the State, it did not survive plaintiff's motion to amend the complaint.

¶ 12. As a final matter, we respond to the dissent's concerns. The dissent reasons that plaintiff's statement regarding Keiser's "personal involvement" in her termination is a legal conclusion, rather than a factual allegation, and is thereby insufficient to make out the elements of a § 1983 claim. This reasoning, however, is in direct conflict with Vermont Rule of Civil Procedure 84, which incorporates appended forms as "sufficient under the rules" and "intended to indicate the simplicity and brevity of statement which the rules contemplate." Among the forms is a complaint for negligence which provides the following illustration:

> 1. On June 1, 1970, in a public highway called Church Street in Burlington, Vermont, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway.

> 2. As a result plaintiff was thrown down and had plaintiff's leg broken and was otherwise injured, was prevented from transacting plaintiff's business, suffered great pain of body and mind, and incurred expenses for medical attention and hospitalization in the sum of one thousand dollars.

> Where plaintiff demands judgment against defendant in the sum of ten thousand dollars and costs.

V.R.C.P. Form 9. By the dissent's reasoning, this complaint, incorporated into our rules of civil procedure, would be insufficient

under our notice pleading rules because the term "negligently" is a legal conclusion, and the complaint includes no further factual allegations regarding the specific actions by the defendant that the plaintiff alleges amounted to negligence. Again, the rules expressly indicate that such complaints are sufficient and, thus, the dissent's reasoning is flawed.

¶ 13. Furthermore, the beauty of our rules of civil procedure is that they strike a fair balance, at the early stages of litigation, between encouraging valid, but as yet underdeveloped, causes of action and discouraging baseless or legally insufficient ones. The complaint is a bare bones statement that merely provides the defendant with notice of the claims against it. See *Lane v. Town of Grafton*, 166 Vt. 148, 150-52, 689 A.2d 455, 456-57 (1997). Its purpose is to initiate the cause of action, not prove the merits of the plaintiff's case. As such, the rules allow a plaintiff to plead over if she has omitted essential elements and require the court to take the plaintiff's allegations as true on a motion to dismiss, so as not to unfairly prejudice the plaintiff before she has any opportunity to develop the case. See V.R.C.P. 15(a); *Amiot v. Ames*, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997) (on a motion to dismiss, court takes all factual allegations in complaint as true).

¶ 14. Here, the State attempted to force a merits determination in the early stages of litigation. It used the wrong procedural vehicle for doing so. A motion to dismiss serves to identify an insufficient cause of action, like the IIED claim here, where essential elements are not alleged. There were other procedural tools at the State's disposal, however, that it chose not to employ. In a motion for summary judgment, the defendant can present facts establishing that the plaintiff cannot prevail on its claims, so that the court may dismiss the case with confidence if the plaintiff fails to show that those facts are either disputed or have no force with respect to the legal claims. See V.R.C.P. 56. If, as the State alleges, plaintiff's claims are not supported by the facts, the State easily could have moved for summary judgment at little expense after conducting limited discovery — namely, taking plaintiff's deposition. See V.R.C.P. 26(f) (authorizing court on its own motion or on motion by either party to set limitations on discovery); *Iqbal*, 490 F.3d at 158 (stating that court may in its discretion permit "some limited and tightly controlled reciprocal discovery so that a defendant may probe for amplification of a

plaintiff's claims and a plaintiff may probe such matters as a defendant's knowledge of relevant facts and personal involvement in challenged conduct"). Alternatively, a motion for more definite statement under Rule 12(e) would have served the goal of providing the information that the State claims it needed to respond to plaintiff's allegations. The dissent, like the State and court below, would decide the merits of the case at this early stage, rather than allow the civil pleading rules to serve their intended function.

*Reversed and remanded.*

¶ 15. **Burgess, J.**, dissenting in part. Surely plaintiff does not depend on pretrial discovery to discover her own disability. Yet plaintiff fails, after two tries, to allege what disables her, why she should be entitled to a workplace accommodation for an affliction she does not identify, or why it was unreasonable not to accommodate her unknown disability. Nevertheless, the majority endorses this empty pleading, along with the rest of plaintiff's FEPA and § 1983 complaints equally devoid of any alleged grounds for such claims, as exemplifying the "beauty" of "underdeveloped" pleading supposedly allowed under our rules of civil procedure. *Ante*, ¶ 13. Not so enraptured by plaintiff's factless complaint, I respectfully dissent from the majority's acceptance of claims based on labels in lieu of substance.

¶ 16. Plaintiff's amended complaint on these counts is not just underdeveloped, but is so starved for substantive allegations that it barely amounts to a spectre. Plaintiff shrouds her complaint with litigation labels, or catch-phrases, such as "wrongful termination" and "qualified disability," and a defendant's "personal involvement" and failure to make "reasonable accommodation," but sets forth no facts leading to her conclusions. Like plaintiff's IIED complaint, correctly found here to lack a description of facts necessary to state the claim, *ante*, ¶ 10, her FEPA and civil rights complaints are nothing more than wishful thinking that fail to satisfy even the minimal requirement of Rule 8(a) to present "a statement of circumstances, occurrences, and events in support of the claim being presented." 5 C. Wright & A. Miller, Federal Practice & Procedure § 1215, at 194 (3d ed. 2004).

¶ 17. The majority misperceives this criticism of the pleadings as a premature rush to summary judgment on lack of evidence, but the problem with plaintiff's pleading is not evidentiary. Rather,

plaintiff's problem is her omission of any facts describing her own actual status or another's actual conduct by which the State or its employee could be liable to her. As well explained by the trial court, plaintiff's amended complaint failed to state a claim against Ms. Keiser under § 1983 and failed to state a claim against the State under FEPA.[2] Plaintiff's claims, as originally pled and as amended, were patently hollow and were properly dismissed.

¶ 18. Instead of plaintiff's conclusions, our rules require "a short and plain statement of the claim *showing* that the pleader is entitled to relief." V.R.C.P. 8(a) (emphasis added). While a party need not provide "a specific and detailed statement of the facts which constitute a cause of action," he or she must provide "a statement clear enough 'to give the defendant fair notice of what the plaintiff's claim is and *the grounds* on which it rests.'" Reporter's Notes, V.R.C.P. 8 (emphasis added) (citing the United States Supreme Court applying the same standard under Federal Rule of Civil Procedure 8(a) in *Conley v. Gibson*, 355 U.S. 41 (1957)); see also *Lane v. Town of Grafton*, 166 Vt. 148, 152-53, 689 A.2d 455, 457 (1997) ("[A] pleading is sufficient as long as it gives fair notice of the claim and *the grounds* upon which it rests." (emphasis added)). This Court, along with a number of other courts, also relies on *Conley* for the majority's proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." 355 U.S. at 45-46 (emphasis added); see, e.g., *Levinsky v. Diamond*, 140 Vt. 595, 600-01, 442 A.2d 1277, 1280-81 (1982) (citing *Conley*, 355 U.S. at 45-46); see also *Alger v. Vt. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 917 A.2d 508 (quoting *Levinsky*, 140 Vt. at 600-01, 442 A.2d at 1280-81).

¶ 19. Recognizing the degradation in the substance of complaints, the United States Supreme Court recently "retired" this "no set of facts" language, concluding that it had "been questioned, criticized, and explained away long enough." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S. Ct. 1955, 1969 (2007). Taken in its proper context, the Court explained, the phrase described "the breadth of opportunity to prove what an adequate complaint

---

[2] Having fully considered, and finding futile, the content of plaintiff's amended allegations, the trial court's refusal to formally accept the amended complaint as filed was immaterial.

claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563, 127 S. Ct. at 1969. If taken literally, however, as the majority does here, this "no set of facts" language would improperly allow "a wholly conclusory statement of claim" to survive "a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 561, 127 S. Ct. at 1968. Again considering the same Rule 8(a) standard as followed in Vermont, the Supreme Court rejected this approach, concluding that in light of the confusion generated by this part of the *Conley* decision, the "no set of facts" language was "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563, 127 S. Ct. at 1969.[3]

¶ 20. Just as an antitrust complaint in *Twombly* was properly dismissed when it furnished "no clue" as to the participants in, and the time and location of, an alleged "conspiracy" in restraint of trade, 550 U.S. at 565, 127 S. Ct. at 1971, so too was plaintiff's complaint properly dismissed when it failed to allege any facts to show why she perceives herself a state employee or how state actors were involved in any wrongful action against her. Yet, as

---

[3] Contrary to the majority's assertion, *Twombly* is not read to overrule *Conley*, or to impose a "new and heightened pleading standard." Cf. *ante*, ¶ 5 n.1. Nor must *Twombly* be read to interject a "flexible 'plausibility standard' " of amplified factual pleadings for some complaints, but not for others, as interpreted in *Iqbal v. Hasty*, cited by the majority as an example of uncertainty in the meaning of *Twombly*. See *Iqbal*, 490 F.3d 143, 157-58 (2d Cir. 2007), *petition for cert. filed*, 76 U.S.L.W. 3349 (U.S. Dec. 17, 2007) (No. 07-827). In what some might view as a hyperliteral critique of *Twombly*, the Second Circuit Court of Appeals in *Iqbal* appears to borrow more uncertainty than is actually presented in *Twombly*. For example, *Iqbal* cites as puzzling *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197 (2007), decided after *Twombly*, but still relying on *Twombly* for the established proposition that "[s]pecific facts are not necessary" for a Rule 8(a) statement that "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 93, 127 S. Ct. at 2200. Confusion arises only for the overly exact reader. While detailed facts may not be required, certainly *some* facts must be alleged for the English language to achieve a "claim" and a description of its "grounds." See, e.g., V.R.C.P. Form 9 (cited *ante*, ¶ 12). As set forth above, the *Twombly* Court only clarified what the *Conley* Court intended its "no set of facts" language to mean when it authored the phrase, and confirmed that the phrase had been taken out of context and misinterpreted by courts like ours since *Conley* was decided. *Twombly* simply reiterated, and returned to, the basic requirements of Rule 8(a).

predicted and criticized in *Twombly*, the majority here relies on the "no set of facts" passage in *Conley* to allow plaintiff's wholly conclusory statements — without any statement of grounds required by Rule 8(a) — to survive a proper motion to dismiss. Rule 8(a) requires more. As the Supreme Court reiterated in *Twombly*, to state a valid claim a party must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* It is with this common sense clarification in mind that we should test the allegations in plaintiff's complaint.

¶ 21. In Count I of her amended complaint, plaintiff alleged that Ms. Keiser, among others, maliciously and wrongfully terminated her employment in violation of 42 U.S.C. § 1983.[4] In an apparent attempt to satisfy the "state action" requirement, plaintiff proposed to amend her complaint to include the following statement: "[u]pon information and belief, Defendant Ms. Keiser had personal involvement in the decision to wrongfully terminate [p]laintiff." This cannot be enough, because we cannot know from the pleading what, if anything, this defendant is supposed to have done wrong. In any event, "it is well established that a state official's mere approval of or acquiescence to the conduct of a private party is insufficient to establish the nexus required for state action." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1450 (10th Cir. 1995) (citing cases). As noted above, Rule 8(a) requires not only that a party provide " 'fair notice' of the nature of the claim, but also [the] '*grounds*' on which the claim rests." *Twombly*, 550 U.S. at 555 n.3, 127 S. Ct. at 1965 n.3 (emphasis added) (citing 5 C. Wright & A. Miller, *supra*, § 1202, at 94-95 (explaining that Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it")).

---

[4] Plaintiff originally alleged that she was an at-will employee of Umbrella and that Umbrella was a "state actor" for purposes of 42 U.S.C. § 1983 by virtue of being subject to state regulation, but concedes in her brief that state regulation does not a state actor make. In her amended complaint, plaintiff no longer claimed to be an employee of Umbrella, although she did not identify any other employer.

¶ 22. The majority nevertheless finds this statement sufficient to state a claim against Ms. Keiser, reasoning that it must be taken as true for purposes of a motion to dismiss. The majority confuses unfounded conclusions with allegations of fact. While a plaintiff's "facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations and legal conclusions." *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (quotation and brackets omitted). Plaintiff's assertion that Ms. Keiser "had personal involvement" in the decision to terminate her is nothing more than a bare recitation of a necessary legal element of any § 1983 claim. See, e.g., *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991) (to avoid summary judgment, plaintiff must show the "personal involvement of defendants in alleged constitutional deprivations" as a prerequisite to an award of damages under § 1983). Plaintiff alleges *no facts or grounds whatsoever* upon which to claim any actual personal involvement on Ms. Keiser's part beyond plaintiff's vague and speculative reference to some unattributed "information and belief." What information, and what the basis is for plaintiff's belief, remains a mystery. Plaintiff's complaint offers not a single suggestion as to when, where, or how Ms. Keiser was allegedly involved in plaintiff's termination.[5] See *DM Research*, 170 F.3d at 55 ("[T]he factual allegations must be specific enough to justify drag[ging] a defendant past the pleading threshold." (quotation and citation omitted)). Plaintiff's claim stands as nothing but a bald conclusory assertion, and it need not be accepted as true.

¶ 23. Indeed, we note that even in her brief, plaintiff cannot say how, or even if, Ms. Keiser was personally involved in her termination. According to plaintiff, there is "some indication that Ms. Keiser may have been involved," and she believes that further

---

[5] The majority's reference to Rule of Civil Procedure Form 9, *ante*, ¶ 12, as a rule-sanctioned example of adequate notice pleading is facially inapposite to plaintiff's pleadings. Form 9 expressly complains that a defendant carelessly drove a car into a pedestrian. No such clear declaration of wrongdoing appears in the instant complaint where plaintiff generally claims, but refuses to describe, "personal involvement" by Ms. Keiser in her termination. "Involvement" could suppose, among other inferences, that Ms. Keiser somehow ordered, or authoritatively advised or approved the firing, some of which conduct might, but not necessarily, be culpable. "Involvement" could just as easily be that Ms. Keiser was merely told about, was advised, or suggested or even agreed that plaintiff should be fired, none of which, without more, would necessarily render the defendant liable. Plaintiff fails to plead any wrongful act on Ms. Keiser's part.

discovery will show that Ms. Keiser was involved. Plaintiff contends that, on her beliefs alone, she is entitled to conduct discovery to determine if Ms. Keiser was properly named as a defendant.

¶ 24. Plaintiff misunderstands the requirements of Rule 8(a). "The need at the pleading stage for allegations plausibly suggesting" that the elements of a claim have been met "reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966. As one court has explained:

> [The] concept of "the pleading threshold" is critical. The complaint should include "a short and plain statement" of the claim showing that the pleader is entitled to relief, so it need not include evidentiary detail. On the other hand, the price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome. Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.

*DM Research*, 170 F.3d at 55 (citation omitted). Plaintiff's pleading lacks heft because it lacks facts. Plaintiff's admission that she needs discovery because she does not know if Ms. Keiser was involved not only warns, but confirms, that she is purely on a fishing expedition.

¶ 25. The decision in *DM Research* is instructive. In that case, the plaintiffs alleged in their complaint that the two defendants had "conspired" with one another, and they argued that for purposes of a motion to dismiss, the court must accept this allegation as true, however implausible it might be. *Id.* The court rejected this notion, finding that terms like "conspiracy," or even "agreement," were "border-line: they might well be sufficient in conjunction with a more specific allegation — for example, identifying a written agreement or even a basis for inferring a tacit agreement — but a court is not required to accept such terms as a sufficient basis for a complaint." *Id.* at 56. Far from being a "technical mouse-trap for an unduly terse plaintiff," the court explained, the ongoing nature of the litigation process, even at the pleading stage, provides plaintiffs with ample opportunity to

remedy the shortcomings of their complaints. *Id.* Plaintiffs in *DM Research* were advised of the thrust of the defendant's arguments for dismissal, and were free to respond to the motion to dismiss by providing "additional facts to make its complaint concrete and plausible," *id.,* but, as in the instant case, failed to do so. They added nothing in their opposition to the motion to dismiss, nor even in their brief on appeal, to provide factual support for their complaint. *Id.* As the court observed, "the discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations. While this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation." *Id.*

¶ 26. This reasoning applies with equal force here. Plaintiff had several opportunities to allege sufficient facts to support her § 1983 claim. Put on notice about the factual shortcomings of her allegations by defendants' motion to dismiss, plaintiff failed to remedy her pleading deficiencies, and her conclusory allegations simply do not suffice to state a claim under Rule 8(a). As recently reiterated in *Twombly,* Rule 8 "still requires a '*showing,*' rather than a blanket assertion, of entitlement to relief." 550 U.S. at 555 n.3, 127 S. Ct. at 1965 n.3 (emphasis added). Plaintiff's 42 U.S.C. § 1983 claim against Ms. Keiser was properly dismissed.[6]

¶ 27. Plaintiff's FEPA claim is equally deficient. To establish a claim under FEPA, a plaintiff must allege that she was a qualified disabled individual and that she was discharged because of her disability. See 21 V.S.A. § 495; *Lowell v. Int'l Bus. Machs. Corp.,* 955 F. Supp. 300, 303 (D. Vt. 1997). In her proposed amended complaint, plaintiff states that she has a "qualified disability," that defendants failed to reasonably accommodate her disability, and that defendants "used [her] disability as a pretense for their malicious and wrongful termination of Plaintiff's employment in

---

[6] To the extent that plaintiff seeks to challenge the dismissal of her § 1983 claim against the State or DCF's Child Development Division (CDD), she waived such arguments by failing to raise them on appeal. We note, however, that it is well settled that the State is not a "person" subject to suit under § 1983, and that to the extent plaintiff sought damages from the CDD due to Ms. Keiser's alleged actions, "*respondeat superior* cannot form the basis for a § 1983 claim." *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir. 1998).

violation of 21 V.S.A. § 495."[7] Alternatively, plaintiff states that her termination was "a direct and proximate result" of her disability. But what disability? What accommodation? What pretense? Plaintiff does not say.

¶ 28. As with plaintiff's proposed § 1983 claim, her FEPA claim consists of nothing but conclusions and labels. Such allegations do not provide defendant with notice as to the particular nature of plaintiff's claim; they merely restate, or attempt to restate, legal elements required for any FEPA claim. Plaintiff does not, or cannot, identify the nature of her alleged disability. Plaintiff is not required to prove that she has a disability to get past a motion to dismiss, but Rule 8(a) still requires that she allege a disability so that the State can formulate a response to her allegation. See *Twombly*, 550 U.S. at 555 n.3, 127 S. Ct. at 1965 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."); see also 21 V.S.A. § 495d(6) (defining term "qualified individual with a disability"); *State v. G.S. Blodgett Co.*, 163 Vt. 175, 181, 656 A.2d 984, 988 (1995) (explaining that to be considered a "qualified handicapped individual," a plaintiff must demonstrate the ability to perform the essential functions of the job with reasonable accommodation).

¶ 29. Indeed, plaintiff fails to allege any facts at all. She does not describe the reasonable accommodation allegedly asked for, nor does she describe the circumstances of the State's alleged refusal to accommodate her. Plaintiff similarly fails to state how, why, or when the State allegedly used her disability as the basis — "pretextual" or not — for terminating her. Seeking to respond to such allegations, a defendant "would have little idea where to begin." *Twombly*, 550 U.S. at 565 n.10, 127 S. Ct. at 1971 n.10. Allowing such a claim under Rule 8(a) is like accepting a negligence claim alleging nothing more than defendant owed plaintiff some undescribed duty of care, and that he breached that duty in some mysterious way resulting in some unknown damage. Rule 8(a) requires more.

¶ 30. Plaintiff further fails to allege any grounds by which to claim that the State was her employer. Indeed, contrary to the

---

[7] The statute speaks of a "qualified disabled individual," 21 V.S.A. § 495, and it appears that this is what plaintiff is referencing when she refers to her "qualified disability."

majority's contention, plaintiff does not even allege in a conclusory fashion in her amended complaint that the State was her employer. Cf. *ante*, ¶ 9. Instead, plaintiff asserted that "Defendant, Vermont Department of Social and Rehabilitation Services, is *an* employer under the definition of employer under 21 V.S.A. § 495 and is liable for the wrongful actions of Defendants Umbrella, Ms. Keiser, Ms. Fay and Ms. Grant in the termination of Plaintiff." (Emphasis added.) Assuming the Department is "an employer" under § 495d(1), it hardly means that it is *plaintiff's* employer. The latter half of this allegation — that the Department is "liable for the wrongful actions" of the other defendants — is nothing more than a legal conclusion, without a fact set forth as to why this could be so. It is not a factual allegation and it need not be accepted as true.

¶ 31. The only other allegations in plaintiff's amended complaint relevant to her identification of an employer liable to her under FEPA might be her assertions that (1) "Defendant Umbrella claimed Plaintiff was an at-will employee and therefore could be terminated at will"; (2) plaintiff's direct supervisor was an Umbrella employee; (3) Ms. Keiser "had supervisory and managerial control over Defendant Umbrella's child care resource center"; and (4) "Defendant State of Vermont Agency of Human Services Department for Children and Families, Child Development Division ('CDD') is an agency of the State of Vermont with supervisory and managerial control over Umbrella's child care resource center." None of these allegations, taken separately or as a whole, provide a sufficient factual predicate of state employment to support plaintiff's FEPA claim against the State.

¶ 32. It is unclear how the majority concludes that plaintiff sufficiently alleges that the State was *her* employer under 21 V.S.A. § 495. *Ante*, ¶ 9. Assuming, as claimed in the amended complaint, that DCF or its employee had supervisory and managerial control over plaintiff's Umbrella worksite, those facts simply do not describe an employment relationship between the State and plaintiff. Clearly plaintiff does not allege any hiring or payment by the State, both factors recognized by the majority as threshold elements for establishing an employment relationship. *Ante*, ¶ 9 (citing *United States v. City of New York*, 359 F.3d 83, 90-91 (2d Cir. 2004)); see also *O'Connor v. Davis*, 126 F.3d 112, 115-16 (2d Cir. 1997) (explaining that "[w]here no financial benefit is obtained by the purported employee from the employer, no

'plausible' employment relationship of any sort can be said to exist because although compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, . . . it is an essential condition to the existence of an employer-employee relationship." (citation omitted)). Plaintiff never actually alleges that the State supervised or managed *her.* Although other tests exist to determine "employee" status under Title VII, plaintiff alleged no facts to support application of any of them. See, e.g., *King v. Dalton,* 895 F. Supp. 831, 837-38 (E.D. Va. 1995) (discussing various tests employed to determine "employee" status under Title VII); see also *Brug v. Nat'l Coal. for Homeless,* 45 F. Supp. 2d 33, 36-37 (D.D.C. 1999) (stating that Title VII covers only those in a "direct employment relationship with a government employer," and most important factor in determining if individual had sufficiently direct employment relationship with federal government is federal government's right to control plaintiff's work); *Mares v. Marsh,* 777 F.2d 1066, 1069 (5th Cir. 1985) (explaining that just because certain grocery baggers who worked on military base had to comply with certain Army regulations concerning dress and conduct, that was "not enough to make them employees of the Army").

¶ 33. It is no answer to say that plaintiff's claim should survive, regardless of its lack of asserted facts, merely because it does not appear beyond a doubt that there exist no facts or circumstances that plaintiff could prove entitling her to relief under FEPA. *Ante,* ¶ 8. As pointed out above, this purported standard, borrowed from *Conley* and since disavowed by its propounding authority in *Twombly,* was never intended to be a substitute for substantial pleadings. It was for empty pleadings such as plaintiff's that *Twombly* disowned the "no possible facts" passage in *Conley* still mistakenly relied on by the majority to sustain plaintiff's complaint. Allowing such complaints, explains *Twombly,* would simply settle for "Mr. Micawber's optimism" in place of substance, and "would dispense with any showing of a 'reasonably founded hope'" that a plaintiff would be able to make a case.[8] 550 U.S. at 562, 127 S. Ct. at 1969. We should, like *Twombly,* stop the erosion of

---

[8] Exemplary of Wilkins Micawber's manic optimism in Charles Dickens' novel "David Copperfield," he famously declares in Chapter 52: "Now, welcome poverty! . . . Welcome misery, welcome houselessness, welcome hunger, rags, tempest, and beggary! Mutual confidence will sustain us to the end!" Applying the actual pleading requirements of Rule 8(a), rather than the majority's dilution, plaintiff's

pleadings under Rule 8(a) and stop compelling the wasted time of human beings in pretrial discovery when, even after repleading, plaintiff fails to describe facts amounting to a legally plausible cause of action.[9]

¶ 34. Contrary to the expectations of plaintiff and the majority, Rule 8(a) does not purport to offer a passport to pretrial discovery in return for simply claiming the possibility of a cause of action. That evidence exists or might later be discovered from defendant to support plaintiff's cause of action is immaterial to the question of whether the factual allegations in her complaint were sufficient to state a claim under the rule. *Id.* at 561, 127 S. Ct. at 1968. Plaintiff's conclusory allegations were plainly insufficient here, and her claims against Ms. Keiser and the State were properly dismissed by the trial court.

¶ 35. I would affirm the trial court's dismissal of all counts, and am authorized to state that Justice Skoglund joins in this dissent.

---

factually impoverished complaint should require more to survive a motion to dismiss than optimistic confidence in her planned discovery expedition.

[9] It is also noteworthy that the majority's view effectively undoes more than Rule 8(a). Since no informed answer can ever be filed in response to complaints like plaintiff's FEPA and § 1983 claims, denials need be merely automatic. Automatic denial obviates the need for much of Rule 8(b) that promotes answers to "meet the substance of the averments" and particularly respond to particular averments, since the need for particularity in a complaint is read out of Rule 8(a) by the majority. No longer recognizing Rule 12(b)(6) motions to dismiss except for legal impossibility, and not for inadequate grounds, the majority justifies denials in all instances as "without knowledge or information sufficient to form a belief as to the truth of an averment." V.R.C.P. 8(b). What had expressly been a defendant's option under Rule 12(e) to request a more definite statement in response to a vague complaint, the majority now mandates as a remedy instead of a motion to dismiss. The imagined remedy of a more definite statement is, of course, rendered a nullity by the majority's holding that a vaporific complaint, like plaintiff's, is already definite enough. Thus, the majority sends Rule 12(e) to join its companions 8(a), 8(b) and 12(b)(6) in the repository of written, but no longer observed, rules of civil procedure.