Filed 09/26/23

VERMONT SUPERIOR COURT                    CIVIL DIVISION
Lamoille Unit                             Case No. 21-CV-02400
154 Main Street
Hyde Park VT  05655
802-888-3887
www.vermontjudiciary.org



| Kiel Ingalls v. Miranda McAllister |
|---|

## ENTRY REGARDING MOTION

Title:          Motion to Amend Complaint; Motion for Relief From Judgment; Motion to Quash ;
- Renewed ; Ronald Dion Subpoena (Motion: 10; 11; 12)
Filer:          Miranda R. McAllister; Samantha V. Lednicky; Samantha V. Lednicky
Filed Date:     August 15, 2023; August 15, 2023; August 17, 2023

The motion is GRANTED IN PART and DENIED IN PART.

The present matter arises from a partition action filed by Plaintiff Kiel Ingalls seeking the division and allocation of real property jointly owned by the parties on Crooks Road in the Town of Eden, Vermont (the "Crooks Road property").  The Court dismissed this initial claim for Partition in January 2022 based on the parties' April 2021 Agreement, which the Court determined, as a matter of law, to be a valid contract, and which controlled the allocation of the real property. Currently, there is a pending counterclaim for specific performance from Defendant Miranda McAllister and a remaining claim by Plaintiff for personal property, which includes a limited claim for unjust enrichment concerning only these personal property items.  A more thorough history of both the underlying facts and the procedural history can be found in the Court's July 30, 2023 Entry Order in this matter.

Presently, the Court is set to try these remaining claims on October 3, 2023.  In anticipation of this trial, Plaintiff has filed two motions: (1) to amend the complaint and (2) for relief from judgment.  Defendant has also filed a motion seeking to quash a subpoena seeking the testimony of Ronald Dion.  The Court will address each of these motions in turn.

*Motion 10: Amend Complaint*

Plaintiff Kiel Ingalls seeks to amend the complaint to include a claim for breach of contract. Plaintiff's Motion to Amend the Complaint, filed August 15, 2023 (Pl.'s Mot. to Amend.).

Defendant opposes Plaintiff's Motion. Defendant's Opposition to Plaintiff's Motion to Amend Complaint, filed August 17, 2023 (Def.'s Opp'n to Amend).

Under the Vermont Rules of Civil Procedure, amendments of complaints are governed by V.R.C.P. 15, which requires that leave to amend the complaint "shall be freely given when justice so requires." V.R.C.P. 15(a); *Lillicrap v. Martin*, 156 Vt. 165, 170 (1989). As the Vermont Supreme Court has noted:

> In considering motions under Rule 15(a), trial courts must be mindful of the Vermont tradition of liberally allowing amendments to pleadings where there is no prejudice to the other party. *Tracy v. Vinton Motors, Inc.*, 130 Vt. 512, 513 (1972). "The principal reasons underlying the liberal amendment policy are (1) to provide maximum opportunity for each claim to be decided on its merits rather than on a procedural technicality, (2) to give notice of the nature of the claim or defense, and (3) to enable a party to assert matters that were overlooked or unknown to him at an earlier stage in the proceedings." *Bevins v. King*, 143 Vt. 252, 255 (1983). In rare cases, however, denial of a motion under Rule 15(a) may be justified based upon a consideration of the following factors: "(1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." *Perkins v. Windsor Hosp. Corp.*, 142 Vt. 305, 313 (1982).

*Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 4.

While the standard for amending a complaint under Rule 15(a) is liberal, it is not entirely without teeth. *Colby*, 2008 VT 20, ¶ 10. Trial courts may deny a motion to amend if it would ultimately be futile or if it would cause undue delay. *Colby*, 2008 VT 20, ¶ 4. Here, Plaintiff raises two arguments in support of his motion to amend to add a breach of contract claim, both of which are likely to be futile and to cause undue delay.

First, Plaintiff argues that Defendant breached the contract when she failed to continue their relationship past April 18, 2021. Plaintiff's Motion to Amend the Complaint at 2 (Pl.'s Mot. to Amend). Plaintiff cites to the fact that Defendant filed a parentage action at that time. However, as the Court has previously acknowledged,

> [N]othing in filing a parentage action constitutes an end to a relationship. A parentage action under the Vermont Parentage Act is the first step when parties are seeking to establish parentage of a child. 15C V.S.A. § 104. The Act "applies for all purposes, including the rights and duties of parentage under the law." 15C V.S.A. § 203. Nothing in filing such an action violates the terms or intent of the April 2021 Agreement.

*Entry Regarding Motion for Emergency Relief, Ingalls v. McAllister*, filed August 21, 2023, at 1–2 (Aug. 21, 2023). Therefore, the filing of a parentage action by Defendant is insufficient to justify a claim for breach of contract.

Second, Plaintiff argues that Defendant breached the contract by failing to act in good faith to agree upon a refinancing amount. Pl.'s Mot. to Amend at 2.

This argument is premature, as the refinancing process has not been completed. Indeed, it appears that Plaintiff, rather than the Defendant, is unwilling to proceed with refinancing and has not participated in the process. Given that Defendant sought specific performance from Plaintiff through the Court to complete the refinancing, it does not appear Defendant is attempting to breach the contract by obstructing the refinancing process. See Court's Aug. 21, 2023 Entry at 2.

Yet, in another sense, the parties' inability to come to an agreement regarding the refinancing goes to the alleged ambiguity in the contract. There can be no breach unless the term of the contract required a specific type of performance that Defendant was refusing to deliver. No such determination or interpretation has been adopted or ordered by the Court. As addressed in the next section, Plaintiff seeks to argue that the April 2021 contact should be interpreted as to require a payment of equity through the refinancing process, or it should be seen as having been omitted. This is an argument seeking a determination of ambiguity, and only if such claims were sustained would he then have a right to a subsequent claim of breach based on Defendant's subsequent failure to secure financing in a particular manner.[1] Given that no such ruling has entered and no such actions have followed, a claim for breach at this juncture is simply not supported by the facts of the case.

Under any of these circumstances or outcomes, Plaintiff's f contract claim show that the amendment would ultimately be futile and would cause undue delay. *See Colby* 2008 VT 20, ¶ 4. Therefore, Plaintiff's Motion to Amend the Complaint is denied.

---

[1] As the Court noted in its August 21, 2023 Entry Order, neither party has had the opportunity to present evidence and have their day in Court. While the Court has been able to make certain rulings as a matter of law, it has been careful not to grant relief prematurely. This reasoning extends to the current motion to amend that seeks to add claims that would first require a determination that the Agreement required Defendant to provide certain payments through the refinancing process and then fats to show that she refused or failed to do so despite her notice of this obligation.

*Motion 11 Relief from Judgment*

Plaintiff moves for relief from judgment under V.C.R.P. 60(b), asking the Court to reconsider its prior denial of Plaintiff's motion to amend his complaint to include claims of unjust enrichment. Plaintiff's Renewed Motion for Relief from Judgment (Pl.'s Renewed Mot.). Defendant opposes.  Defendant's Opposition to Plaintiff's Renewed Motion for Relief from Judgment, filed August 17, 2023.

Although Plaintiff has moved for reconsideration under Rule 60(b),

> the motion [is] not in fact one under Rule 60, however entitled. It [is], in substance, a motion to revise an interlocutory order, appropriate under the general power of revision contained in V.R.C.P. 54(b). As such, it is within the plenary power of the court to afford such relief as justice requires, and not within the restrictive provisions of 60(b), which apply only to final judgments. *Brown v. Tatro*, 136 Vt. 409, 411 (1978).

*Dudley v. Snyder*, 140 Vt. 129, 131 (1981). Here, no final judgment has been rendered, therefore no relief from final judgment can be granted.

While 60(b) is not the appropriate vehicle for this motion, the Court may modify its previous order denying Plaintiff's motion to add an unjust enrichment claim.

> The law-of-the-case doctrine "normally does not bind the trial court," *Kneebinding, Inc. v. Howell*, 2018 VT 101, ¶ 31, 208 Vt. 578, and the court may depart from the doctrine "in a proper case," *Morrisseau v. Fayette*, 164 Vt. 358, 364 (1995) (quotation omitted). We have recognized that trial courts have "the discretion to modify an interlocutory order."

*Fabiano v. Cotton*, 2020 VT 85, ¶ 21. "Accuracy of decisions in difficult cases is promoted when, as in this context, reconsideration of a prior…decision was necessary to a just and comprehensive resolution of the issues before the court." *Myers v. LaCasse*, 2003 VT 86A ¶ 15.

Previous decisions in this case have held that the parties' April 2021 Agreement was a valid contract that governed the disposition of the Crooks Road property.  Court's Aug. 21, 2023 Entry at 2 (citing Court's Entry Regarding Motion, filed Jan. 19, 2022 and Court's Entry Regarding Motion, filed Mar. 2, 2022). The Court does not alter this determination.  As a matter of law, the undisputed facts show that the parties entered into a valid contract, at the very least, for the allocation of the Crook Road property to Defendant.  The April 2021 Agreement also lays out several terms and

elements of consideration that govern how this property is to be transferred. As Plaintiff notes, he is not seeking to undo or modify these portions of the April 2021 Agreement or their implications.

Instead, Plaintiff contends that the April 2021 Agreement is "ambiguous or vague as to the assignment of equity and requires further findings of fact." Pl.'s Renewed Mot. at 2. Plaintiff argues that the April 2021 Agreement "contemplates" a payout for Plaintiff that would enable him to buy a new home and compensate him for his contributions. *Id.* at 4. Specifically, Plaintiff has argued that Defendant is obligated, through the refinancing process, to go beyond merely removing Plaintiff's name from the mortgage and also compensate Plaintiff for his equity in the home. Amended Complaint, filed August 15, 2023, at 2. To the extent the plain language of the parties' agreement could be construed as ambiguous, the court can also consider the circumstances surrounding the agreement to determine if the language in dispute is "truly ambiguous." *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 577 (1988).

Defendant maintains that the 2021 Agreement is unambiguous. Response to Plaintiff's Opposition to Defendant's Motion for Emergency Relief, filed August 17, 2023. Defendant argues that the disputed term refers to Plaintiff being relieved of his obligations under the mortgage by refinancing, freeing up his finances and allowing him to purchase another home with his own money and credit. Def.'s Opp'n to Amend.

While previous decisions in this case have turned on the fact that Plaintiff's claim to the equity in the home was governed by the contract, implying the Court believed the equity followed the house in the contract, the Court has never analyzed whether the contract was ambiguous as to the division of equity in the home. Court's Entry Regarding Motion, filed January 19, 2022; Court's Entry Regarding Motion, filed March 2, 2022. As the Vermont Supreme Court notes:

> Ambiguity exists where the disputed language will allow more than one reasonable interpretation. In such cases, this Court may consider the circumstances surrounding the making of the agreement to ascertain the parties' true intent. While we may examine the surrounding circumstances to determine whether a provision of the agreement is ambiguous, this Court may not use those circumstances to vary the terms of an unambiguous writing. Where the terms of an agreement are plain and unambiguous, they will be given effect and enforced in accordance with their language.

*O'Connell-Starkey v. Starkey*, 2007 VT 128, ¶ 8, 183 Vt. 10 (citations omitted).

"A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation." *Isbrandtsen.*, 150 Vt. at 577(citations omitted). "This is 'a question of fact to be determined based on all of the evidence—not only the language of the written instrument, but also evidence concerning its subject matter, its purpose at the time it was executed, and the situations of the parties.'" *Towslee v. Callanan*, 2011 VT 106, ¶ 5, 190 Vt. 622 (mem.). "Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Isbrandtsen*, 150 Vt. at 579.

In this case, the plain language of the agreement, without consideration of extrinsic evidence, is straightforward and unambiguous. The obligations of the contract are triggered by the end of the relationship between Plaintiff and Defendant. Defendant is to stay in the Crooks Road property, and the parties are to give her sole ownership of the property. Defendant is obligated to refinance the loan to remove Plaintiff's name from the mortgage and deed so that he will have the opportunity to purchase another home. This one-sentence contract imposes benefits and burdens on both sides. Defendant retains the property, but she must bear the burden of the mortgage alone. She also takes on the risk that the house will be lower in value (i.e. there may be no equity to divide) or that a new mortgage will only be available on unfavorable terms. Plaintiff must leave the house, but he is released from any exposure on the refinancing, he is allowed to forgo the mortgage obligation, and his finances and credit are available to invest in another property.

The main problem here is that the April 2021 Agreement does not make express provisions for the issue of equity. The Court is looking to the refinancing term. Plaintiff argues that there are circumstances, which if found by the Court, could imply a distribution of equity instead of a waiver of any equity. The Court is obliged under *Isbrandtsen* to look broadly at the circumstances surrounding the contract to determine if this is, in fact, an ambiguity. 150 Vt. at 575–576, 580.

In this case, while the Court has made several rulings on the legal issues and conclusions, it has not received evidence, nor made findings on whether there are certain facts regarding the surrounding circumstances, which under *Isbrandtsen* would be instructive as to how the parties intended the 2021 Agreement to address equity.

The parties currently dispute the value of Plaintiff's contributions to the property. Plaintiff alleges that he "improved the property…performed landscaping work, cut trees, cut brush, and

improved the lawn and yard; brought in topsoil, stone and gravel to improve the property and driveway; constantly work[ed] outside; [and] built a shed on the property" among other projects. Affidavit of Kiel Ingalls, filed April 1, 2022, at 2. Defendant disagrees, alleging that "other than adding one load of stone to our driveway, which he received for free from his work, Kiel contributed no meaningful sweat equity into the home beyond simple yard work." Second Affidavit of Miranda McAllister, filed December 17, 2021, at 1.

Without seeing the appraisal of the property, it is likewise difficult to determine the value (if any) of Plaintiff's work on the property and appreciate his argument that he is entitled to a payout for his equity. It is also unclear whether there is in fact any equity to distribute.

For these reasons, the Court will allow testimony and evidence concerning the value of the property, Plaintiff's contributions, and other testimony concerning the circumstances of the April 2021 Agreement and whether the circumstances indicate an ambiguity.

In addition to the arguments that the parties have offered concerning April 2012 Agreement's treatment of the equity, Plaintiff continues to argue that he is entitled to an award of unjust enrichment if the Court determines that the Agreement is silent on this issue of equity. In support of this position, Plaintiff cites *Kwon v. Edson*, 2019 VT 59, ¶ 27, as standing for the proposition that the existence of a contract does not preclude recovery pursuant to an unjust enrichment claim. Pl.'s Renewed Mot. at 1. However, the court in *Kwon* stated that "the existence of a contract and the terms of that contract are highly relevant in determining whether denying further payment is unjust." *Id.* That is, while the mere existence of the contract does not preclude recovery in unjust enrichment, the terms of that contract are highly relevant in determining whether the standard for unjust enrichment is met. *Id.*

Notwithstanding the existence of the April 2021 Agreement, there is a possibility that if the Court does find from the circumstances that there was an ambiguity concerning the allocation of equity, and if it further finds that neither Plaintiff's proffered interpretation (that the refinancing was to include equity) or Defendant's (equity was waived and release) reflect the intent of the parties at the time of formation in light of these circumstances, then there is a third possibility that this term was left out of the Agreement and should be addressed by equitable remedy. To the extent that the evidence leads in this direction, the Court will allow testimony, evidence, and argument on this point. At the same time, the Court reiterates that such claims are ultimately in the alternative and

would at a minimum require a demonstration that the equity of equity was not only not addressed by the April 2021 Agreement but was also omitted from the parties' bargain. If the Court concludes that the April 2021 Agreement is not ambiguous in light of the circumstances, then unjust enrichment is improper and will not apply.

On this very limited basis, the Court will grant Plaintiff's Motion to Amend to add the claim of unjust enrichment so that the Court can hear testimony regarding what the parties intended to achieve regarding the equity in the contract.

*Motion 12 Motion to Quash Subpoena*

Defendant Miranda McAllister seeks to quash a subpoena issued by Plaintiff to Ronald Dion with Union Bank for a copy of an appraisal of the 1033 Crooks Road property. Defendant's Motion to Quash, filed August 17, 2023. Plaintiff Kiel Ingalls opposes. Opposition to Defendant's Motion to Quash Subpoena, filed August 29, 2023.

Given the clarification and ruling of the Court in this Entry Order, evidence of the value of the equity in the house is relevant to the issue of contract ambiguity (what the parties were bargaining for at the time they created the contract). The Court cannot understand the circumstances surrounding the creation of the contract without evidence regarding the subject matter of their contract. *See Isbrandtsen*, 150 Vt. at 580. Further, if the contract is truly silent as to the division of the equity, the appraisal evidence is relevant for Plaintiff's recovery in unjust enrichment.

For these reasons, Defendant's Motion to Quash Subpoena is Denied.

## ORDER

Based on the forgoing, Plaintiff's Motion to Amend the Complaint is **Denied**, Plaintiff's Renewed Motion for Relief from Judgment is **Granted**, and Defendant's Motion to Quash Subpoena is **Denied**. The trial in this matter shall proceed on October 3, 2023 as previously noted.

Electronically signed on 9/26/2023 2:01 PM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge