*Vt. Fed'n of Sportsmen's Club v. Birmingham*, No. 224-4-18 Wncv (Teachout, J., Mar. 20, 2019).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 224-4-18 Wncv** |

**VERMONT FEDERATION OF**
**SPORTSMEN'S CLUBS, et al.**
    **Plaintiffs**

    **v.**

**MATTHEW BIRMINGHAM, et al.**
    **Defendants**

### DECISION
### The State's Motion to Dismiss
### Plaintiffs' Motion for Summary Judgment

Plaintiffs are Vermont organizations, retailers, and individuals with an interest in firearms and the continued lawful availability in Vermont of "large capacity ammunition feeding devices," which were recently banned, subject to exception, by 13 V.S.A. § 4021.[1]  They seek a declaration that § 4021 violates Article 16 of the Vermont Constitution, which protects the right to bear arms, and an injunction against its enforcement.  Vt. Const. ch. I, art. 16.  Defendants are several State actors sued in their official capacity only (collectively, the State).  The State has filed a motion to dismiss arguing that Plaintiffs lack standing to attack the constitutionality of 13 V.S.A. § 4021 and that the ban is constitutional as a matter of law.  Plaintiffs oppose dismissal and seek summary judgment in their favor on the same issues.

The core prohibition in § 4021 is as follows: "A person shall not manufacture, possess, transfer, offer for sale, purchase, or receive or import into this State a large capacity ammunition feeding device."  13 V.S.A. § 4021(a).  A "large capacity ammunition feeding device" generally means "a magazine, belt, drum, feed strip, or similar device" able to "readily" deliver more than 10 rounds of ammunition to a "long gun" and 15 to a "hand gun."  13 V.S.A. § 4021(e)(1).  Violations of § 4021 are subject to criminal penalties including imprisonment and fines.  13 V.S.A. § 4021(b).

Article 16 of the Vermont Constitution provides: "That the people have a right to bear arms for the defence of themselves and the State—and as standing armies in time of peace are dangerous to liberty, they ought not to be kept up; and that the military should be kept under strict subordination to and governed by the civil power."  Vt. Const. ch. I, art. 16.

---

[1] Plaintiffs object to the characterization of the banned magazines as "large."  The statutory expression for the banned devices, however, is "large capacity ammunition feeding devices."  For purposes of this decision, the court refers to banned magazines as large simply to refer to those magazines banned by the statute, not as a reflection on the size of the banned magazines in relation to smaller or larger ones.

*The State's Motion to Dismiss—Standing*

"Standing doctrines are employed to refuse to determine the merits of a legal claim, on the ground that even though the claim may be correct the litigant advancing it is not properly situated to be entitled to its judicial determination." 13A Wright & Miller et al., Federal Practice & Procedure: Jurisdiction 3d § 3531 (footnote omitted). The State argues that all plaintiffs lack standing to challenge the ban on large capacity magazines because each has failed to allege a sufficient "injury in fact." See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (describing the constitutional elements of standing); *Parker v. Town of Milton*, 169 Vt. 74, 77–78 (1998) (explaining that in *Hinesburg Sand & Gravel*, the Vermont Supreme Court adopted the standing test articulated in *Lujan*); *Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 340–41 (1997); see also 5B Wright & Miller et al., Federal Practice & Procedure: Civil 3d § 1350 (explaining that an alleged defect in constitutional standing is properly raised initially under Rule 12(b)(1)). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted).

The three individual plaintiffs in this case, Mr. John Fogarty, Mr. Samuel Frank, and Ms. Leah Stewart, all allege that they lawfully own long guns and hand guns appropriate for large magazines prohibited by 13 V.S.A. § 4201 and that they would purchase those magazines for home-defense or other lawful purposes but for the criminal bar that they believe violates their Article 16 rights. The State argues that Plaintiffs' asserted intentions are altogether too vague and remote to demonstrate any injury at this time and there is no apparent risk of prosecution in any event.

The individual plaintiffs, however, clearly allege a classic *pre-enforcement* injury sufficient for standing purposes. See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (confirming propriety of standing in pre-enforcement suit when petitioner "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder" (citation omitted)). There is no ambiguity as to what the statute bans and whether Plaintiffs' intended conduct would violate it. Nor is there any record basis to doubt Plaintiffs' sincerely held beliefs or to think that Vermont prosecutors, for reasons that the State does not explain, would exercise their discretion to refuse to prosecute Plaintiffs if they did violate it.[2] This is not a case where the meaning of the statute, or whether Plaintiffs' alleged conduct would violate it, is in any doubt. Courts do not require law-abiding citizens to become criminals to earn the privilege to challenge the constitutionality of a statute.

Plaintiffs' allegations are easily sufficient to show standing at this stage of the litigation. See *Lujan*, 504 U.S. at 561 (standing showing is subject to procedural posture of the case).[3]

---

[2] The State conceded at oral argument that the State is currently prosecuting an alleged violation of 13 V.S.A. § 4021 and that the defendant in that case would have standing to challenge the constitutionality of § 4021.

[3] Plaintiffs also address the issue of their standing in their summary judgment motion. Because the court is denying summary judgment to allow a meaningful factual record to develop in an adversarial manner, the court addresses

Because the other plaintiffs in this case raise the same constitutional challenge as the individual plaintiffs do, there is no need to separately examine whether they independently have standing. See *Secretary of the Interior v. California*, 464 U.S. 312, 319 n.3 (1984).

*The State's Motion to Dismiss—Article 16*

The State also seeks dismissal of Plaintiffs' complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). In the State's view, no matter what standard the court might apply to Plaintiffs' constitutional claim, however scrutinizing, the only possible outcome is that 13 V.S.A. § 4201 complies with Article 16. The case needs no factual development, according to the State, to arrive at that conclusion.

In Vermont, motions to dismiss are "'not favored and rarely granted.' This is especially true 'when the asserted theory of liability is novel or extreme,' as such cases 'should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of mere novelty of the allegations.'" *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309 (citations omitted); see also *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 13, 184 Vt. 1 ("The complaint is a bare bones statement that merely provides the defendant with notice of the claims against it."); *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 ("the threshold a plaintiff must cross in order to meet our notice-pleading standard is 'exceedingly low'").

The State's argument is not that Plaintiffs have failed to state a claim, however novel, upon which relief may be granted, but that Plaintiffs have stated a claim that the State must win no matter what standard is applied to the analysis. However, once it is determined that the plaintiff has stated a claim, "the motion to dismiss must be denied and the action should be permitted to continue." 5B Wright & Miller, Federal Practice & Procedure: Civil 3d § 1357. A decision on the merits of the claim must rest on analysis of the claim in relation to a sufficient body of pertinent facts.

*Plaintiffs' Motion for Summary Judgment—Article 16*

In response to the State's motion to dismiss, Plaintiffs filed a motion seeking summary judgment on their constitutional challenge. They seek a ruling as a matter of law that 13 V.S.A. § 4201 violates Article 16. They urge the court to adopt a "categorical" approach to Article 16 that rejects any inquiry into the "reasonableness" of limits on their rights, such as is represented by the § 4201 ban on large capacity magazines. The State opposes the categorical analysis advanced by Plaintiffs and reiterates its dismissal argument. It argues that any test adopted by this court to evaluate the constitutionality of § 4201 will inexorably lead to the conclusion that the statute is constitutional.

Summary judgment is predicated on a body of undisputed material facts that is sufficient to support the legal ruling. V.R.C.P. 56(a). Plaintiffs included with their motion a lengthy statement of facts addressing, among other topics, the history of firearms use in Vermont, the historical and current use of magazines in the range of those banned by § 4201, and social, criminal, and other dimensions of the ban in Vermont. The Rule requires that when a party

standing at this time only in relation to the motion to dismiss.

claims that facts are undisputed, the "concise statement of undisputed material facts" be supported by citations to specified materials that constitute admissible evidence. V.R.C.P. 56(c)(1). The State has objected to many of the Plaintiffs' "facts" as having been presented in the form of inadmissible hearsay or allegations which are or may be contested. It also objects pursuant to Rule 56(d) that, in any event, such facts should not be relied upon until it has a fair chance to conduct discovery, contest Plaintiffs' facts, and develop its own.

At oral argument, Plaintiffs argued that the court could simply take notice of the facts presented by Plaintiffs because they are "legislative facts" and are not adjudicative in nature. Adjudicative facts are "those propositions pertaining to the particular events which give rise to the lawsuit." Reporter's Notes, V.R.E. 201. The Rules of Evidence set forth rules and limits on the admissibility of evidence related to adjudicative facts, and include specific provisions for the court to admit certain facts by "judicial notice" (not established by testimony or exhibits but capable of accurate determination, such as what day of the week a certain date was on). *Id.* Plaintiffs ask the court to rely on numerous allegations that they characterize as "legislative facts" that may be relied on by a court in its "inherent and absolute discretion." Reporter's Notes, V.R.E. 201. The only definition of "legislative facts" in the Reporter's Notes is as follows: "those more general propositions relied upon by a court in determining the existence or scope of a rule of law." This concept of what constitutes a fact to be relied on in making a judicial ruling could easily be applied in such an expansive way that it would be difficult to determine the basis of a judicial decision and thus compromise public confidence in the rigor of judicial decision making. In this case, both parties' constitutional arguments depend heavily on facts that are "legislative" in nature in that they are essentially general propositions and allegations supported by citations to history books, periodicals, and other publications in which an author makes historical or factual representations. Thus they are untested by rules of court that provide for development of a body of specific admissible evidentiary facts pertinent to the case.

For examples of scholarly criticism of courts' use of facts not arrived at by adversarial presentation, see generally F. Schauer, *The Decline of "The Record": A Comment on Posner*, 51 Duq. L. Rev. 51 (2013); B. Gorod, *The Adversarial Myth: Appellate Court Extra-Record Factfinding*, 61 Duke L.J. 1 (2011).

Vermont's evidentiary and procedural rules include no specific process for recognizing legislative facts, whereas both the Rules of Evidence and the Rules of Procedure proceed from the ideal of the adversarial process in which judicial decisions are made in relation to a specific body of facts developed for purposes of deciding the case. Both parties would have the court rule on their arguments without a factual record meaningfully tested by the adversarial process. The court declines to do so. A factual record developed by the adversarial method will provide a firm foundation for resolution of the important legal issue presented by this case.

Plaintiffs' summary judgment motion is denied at this time on that basis.

4

ORDER

For the foregoing reasons, the State's Motion to Dismiss and Plaintiffs' Motion for Summary Judgment are both denied.

The attorneys shall submit a proposed pretrial scheduling order by April 5, 2019, or a scheduling conference will be set pursuant to V.R.C.P. 16.

Dated at Montpelier, Vermont this _____ day of March 2019.

_____
Mary Miles Teachout
Superior Judge